**SPINDLETOP OIL AND GAS COMPANY, a Texas Corporation; Paul E. Cash; J.W. Heflin; Go Oil Corp.; W.C. Harms; Alma Ruth Harms; and Dallas Production, Inc., Appellants and Cross-Appellees,**

v.

**PARKER COUNTY; Gerald Birdwell, County Judge, Parker County, Texas; Wayman Wright, County Commissioner, Parker County, Texas; Chandler Sanders, County Commissioner, Parker County, Texas; C.K. Combs; J.T. McLaughlin; L.E. Glenn, Tax Assessor–Collector, Parker County, Texas, Appellees and Cross-Appellants.**

No. 2–86–127–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 13, 1987.

Giles & Yeakel, with Earl L. Yeakel, III and Mark T. Mitchell, Austin, for Spindletop.

William H. Cantrell, Co. Atty., Weatherford, Eskew, Muir & Bednar, Doren R. Eskew, Austin, for Parker County.

Before FENDER, C.J., and BURDOCK and HILL, JJ.

## OPINION

FENDER, Chief Justice.

This case concerns the appraisal, equalization, assessment, and collection of 1979 *ad valorem* taxes on certain oil and gas properties in Parker County, Texas. Spindletop Oil and Gas Company and intervenors, Paul E. Cash, J.W. Heflin, Go Oil Corporation, W.C. Harms, Alma Ruth Harms, and Dallas Production Company, are plaintiffs in an action to enjoin the appraisal and cross-defendants in the attending counterclaim. Defendants to the injunction suit are Gerald Birdwell, County Judge, Parker County, Texas; Wayman Wright, County Commissioner, Parker County, Texas; Chandler Sanders, County Commissioner, Parker County, Texas; C.K. Combs; J.T. McLaughlin; and L.E. Glenn, Tax Assessor–Collector, Parker County, Texas.[1] This opinion will refer to the parties as plaintiffs and defendants, respectively, to avoid confusion. Defendants counterclaimed against plaintiffs for delinquent taxes.

The trial court upheld defendants' assessment of taxes but declined to award the statutory interest and penalties which had accrued from the date the taxes were first due to the date of judgment. All attorneys fees and court costs were taxed against the party accruing the same. Both parties appealed.

We affirm in part and reverse and remand in part.

Originally, plaintiffs brought a precertification class action suit to enjoin Parker County's 1979 assessment of taxes because oil and gas properties were taxed at 100% market value while all other properties were assessed at varying percentages of values having no basis in market value. The district court granted the injunction and the Board of Equalization stated that it would stand in recess since it could not complete its work or adjourn.

The question of the taxing plan's validity was presented to the Supreme Court of Texas which held that Parker County's original taxing plan was fundamentally er-

roneous. *Parker County v. Spindletop Oil & Gas Co.,* 628 S.W.2d 765, 768 (Tex. 1982). The Court's judgment was made without prejudice to Parker County's right to reassess the class members' property in accordance with the law. *Id.* Parker County was ordered to place all property on the tax rolls at market value and uniformly assess all property for 1979. *Id.* at 769.

The following events then took place according to the agreed statement of facts filed in this case:

4. The plaintiff and intervenors received written notice that on the [sic] December 21, 1982, the following defendants convened in Special Session as the Parker County Board of Equalization of 1979:

"Gerald Birdwell, County Judge, presiding Wayman Wright, Commissioner, Precinct 1, present Chandler Sanders, Commissioner, Precinct 2, present C.K. Combs, Commissioner, Precinct 3, absent J.T. McLaughlin, Commissioner, Precinct 4, absent."

. . . .

6. The two persons listed as "absent" in said notice were not, on December 21, 1982, and are not now, elected incumbent occupants of the office of Precinct Commissioner of Parker County, Texas.

7. On the [sic] January 18, 1983, four of said defendants again reconvened in Special Session as the Board of Equalization of 1979 and invited all interested persons to present any evidence of value or opinions regarding equalization of values, but no evidence was offered except the evidence presented by Michael Barnett, L.E. Glenn and Doren R. Eskew.

. . . .

b. On January 18, 1983, plaintiff, Spindletop Oil and Gas Company, and Paul E. Cash, appeared in person with their attorney, Earl L. Yeakel, III, at the County Courtroom, Parker County, Texas, and objected to the legal authority and jurisdiction of the [defendants] sitting as the Board of Equalization of

1. Parker County is also acting for the Garner Independent School District.

1979, stating that it was the opinion or [sic] Mr. Yeakel that there existed no constitutional or statutory authority for said persons to sit as a Board of Equalization as of January 18, 1983, and declining to introduce any evidence.

c. At said meeting the attorney for Parker County and Garner Independent School District, Doren R. Eskew, cited the authorities for his opinion that said persons had jurisdiction and were legally authorized to proceed as the 1979 Board of Equalization for the purpose of equalizing the 1979 value of the properties of the class action plaintiffs with all other 1979 property values.

d. At such meeting on January 18, 1983, final taxable values of the properties of plaintiffs for 1979 were equalized in the following manner:

(1) The uncontradicted evidence of the witness, Michael Barnett, that all taxable properties which were reappraised in the county and school district for the Parker County Appraisal District had a full value of $743,366,550.00 as of January 1, 1980, was accepted as true.

(2) The values of oil and gas properties as of January 1, 1979, which had been fixed at $97,296,774.00 were subtracted from the 1980 total figures, resulting in a value for property other than oil and gas properties for 1980 of $646,069,776.00.

(3) The Board of Equalization then considered the inflation and depletion factors which may have accrued on the value of all taxable property between 1979 and 1980 and fixed all properties of all certified class plaintiffs on the basis of 66⅔% of the values originally fixed in 1979.

9. The defendants assessed all properties of all certified class plaintiffs on the basis of 66⅔% of the values originally fixed in 1979 at 35% of full value, which is twenty-three and thirty-three hundredths percent (23.33%) of the full 1979 value of said properties.

10. On January 18, 1983, Mr. Paul Cash, the managing partner of Spindletop Oil and Gas Company, and his attorney, Mr. Earl L. Yeakel, III, asked that Spindletop be excused from paying interest or penalty on 1979 taxes assessed, and on January 25, 1983, Mr. Earl L. Yeakel, III, was advised by Doren R. Eskew, attorney for Parker County and Garner Independent School District, that no penalty would be assessed if all 1979 taxes were paid before March 1, 1983, but that the 1979 taxes would be so calculated pursuant to statute as to include simple interest at the rate of six percent (6%) per annum from February 1, 1980, to December 31, 1981, and at the rate of twelve percent (12%) per annum from January 1, 1982, until March 1, 1983.

11. On February 28, 1983, the managing partner of Spindletop Oil and Gas Company, Mr. Paul Cash, tendered to Mrs. Wendy Osteen, Collection Supervisor in the office of the Central Tax Authority of Parker County, Texas, while Mr. Michael Barnett was absent from the County, non-certified checks payable to Parker County Central Tax Authority from the following taxpayers in the following amounts:

| | |
|---|---|
| Spindletop Oil and Gas Company | $21,525.24 |
| Paul E. Cash | 15.62 |
| J.W. Heflin | 35.46 |
| W.C. Harms and Alma Ruth Harms | 1,063.19 |
| Go Oil Company | 1,164.57 |
| Dallas Production, Inc. | 37,726.00 |

... When the checks were tendered to Mrs. Osteen, she stated that she would not issue tax receipts, that the accounts would not be credited, and the checks would not be cashed until and unless Mr. Barnett determined that they should be.

12. When Mr. Michael Barnett returned to Parker County on March 3, 1983, he returned all of the checks described in paragraph 11, stating that such checks represented only partial payment of the amounts shown to be due on the 1979 tax statements of the respective taxpayers.

. . . .

14. Statements for all delinquent 1979 taxes have been sent to all delinquent 1979 taxpayers by the Central Tax Authority of Parker County, Texas.

15. The delinquent 1979 tax records of Parker County, Texas, show that all such taxes have borne interest calculated at the rate of six percent (6%) per annum from February 1, 1980, to December 31, 1981, and at the rate of twelve percent (12%) per annum from January 1, 1982, to March 1, 1983.

16. The delinquent 1979 tax records of Parker County show that on March 1, 1983, a penalty of six percent (6%) accrued, and that an additional penalty of one percent (1%) per month has accrued since March 1, 1983, and will continue to accrue until all taxes have been paid, or until a twelve percent (12%) penalty has accrued, whichever first occurs. If not paid before July 1, 1983, an additional collection fee of fifteen percent (15%) will be added while statutory interest continues to accrue at the rate of one percent (1%) per month until paid [sic] is complete.

Plaintiffs filed this request to enjoin the "recessed" 1979 Board of Equalization from assessing and collecting the taxes owed in such a manner. Defendants counterclaimed for delinquent taxes. The cause was submitted to the court on the basis of the agreed statement of facts, written briefs and arguments. On February 20, 1985, the court entered judgment that defendants recover from plaintiffs the following amounts:

| | |
|---|---|
| Spindletop Oil and Gas Company | $27,014.19 |
| Paul E. Cash | 92.90 |
| J.W. Heflin | 44.51 |
| W.C. Harms and Alma Ruth Harms | 1,334.30 |
| Go Oil Company | 1,461.55 |
| Dallas Production, Inc. | 47,346.34 |

In addition, the court awarded statutory interest, penalties, and collection fees and charged all court costs against plaintiffs.

About March 8, 1985, defendants made a motion for new trial solely for the purpose of completing the record. A similar amended motion was filed on March 20, 1985. On this basis the trial judge ordered a new trial on the entire cause. After hearing more arguments, the trial court entered its judgment of June 9, 1986. It ordered that defendants be awarded the following amounts from plaintiffs:

| | |
|---|---|
| Spindletop Oil and Gas Company | $21,525.24 |
| Paul E. Cash | 146.87 |
| J.W. Heflin | 35.46 |
| W.C. Harms and Alma Ruth Harms | 1,063.19 |
| Go Oil Company | 1,164.57 |
| Dallas Production Company | 37,726.00 |

The court awarded no statutory interest, penalties, or collection fees but did award post-judgment interest. All costs were taxed against the parties incurring the same.

On January 1, 1982, the Texas Property Tax Code became effective. Parker County has been a member of the Parker County Appraisal District since the Code became effective.

All parties have appealed. Plaintiffs assert the following points of error:

### Point of Error No. I–P

The trial court erred in its judgment for appellees in that appellees failed to legally appraise, assess and equalize appellants' 1979 ad valorem taxes pursuant to the Texas Property Tax Code.

### Point of Error No. II–P

The trial court erred in its judgment for appellees in that appellees failed to legally appraise, assess and equalize appellants' 1979 ad valorem taxes pursuant to TEX.CIV.STAT.ANN. art. 7145 et seq. (Repealed 1980).

### Point of Error No. III–P

The trial court erred in its judgment for appellees in that appellees failed to legally appraise, assess and equalize appellants' 1979 ad valorem taxes pursuant to article VIII of the Texas Constitution. Defendants assert the following points of error:

### Point of Error No. 1–D

The trial court fundamentally erred in forgiving delinquent taxpayers statutory interest, penalty and collection costs.

## Point of Error No. 2–D

The trial court erred in taxing court costs against a county in a delinquent tax case.

For clarity the mineral owners' complaints will be denoted by Roman numeral with P appended. The governments' claims will reflect Arabic numerals with D appended.

■ Under point of error I–P, the briefs submitted by the plaintiffs urge that the mandate of the Supreme Court could only be carried out by utilizing the powers of the Parker County Appraisal District and by following the procedures set out in the Texas Property Tax Code. Plaintiffs urge that the Property Tax Code abolished status of the Parker County Commissioner's Court as a 1979 Board of Equalization for that county. This argument overlooks the provisions of the Code Construction Act. *See* TEX.GOV'T CODE ANN. ch. 311 (Vernon Pamph. Supp.1987). Section 1.03 of the Property Tax Code specifically makes the Code Construction Act applicable to the Tax Code. TEX.PROP. TAX CODE ANN. sec. 1.03 (Vernon Supp.1987).

Two provisions of the Code Construction Act are important here (in pertinent part):

Section 311.021. ... In enacting a statute, it is presumed that:

. . . .

(3) a just and reasonable result is intended;

(4) a result feasible of execution is intended; and

(5) public interest is favored over any private interest.

and,

Section 311.031. ... the reenactment, revision, amendment, or repeal of a statute does not affect:

. . . .

(2) any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred under it;

. . . .

(4) any ... proceeding, or remedy concerning any privilege, obligation, liability, [or] penalty ... and the investigation, proceeding, or remedy may be ... contin-

ued, or enforced ... as if the statute had not been repealed or amended.

TEX.GOV'T CODE ANN. ch. 311.

Here the county commissioners were properly sitting as a board of equalization when a temporary injunction was issued and the completion of their work interrupted. The board recessed to await the final result. They did not adjourn *sine die*. They were not terminated by any statute. When they undertook to reconvene, a quorum of the recessed board was available (and still in office, for whatever value that fact may add). All actions of the reconvened board were approved by each who made up such quorum.

The various requirements of articles 7346, 7347 and 7348, Vernon's Annotated Civil Statutes, were observed. Lists were prepared. Following testimony a formula was developed to reflect market value for all real property in Parker County. By an additional formula the assessed values of plaintiffs' properties were adjusted to be uniform with non-mineral properties in the county. Plaintiffs admit that this resulted in an ultimate assessment equal to 23.33% of the 1979 full market value.

Plaintiffs' suggestion that the only way to properly assess their interests would be for the Parker County Appraisal District to conduct a complete reappraisal of *all* property in the county for the year of 1979 is absurd. Although the record does not reflect the cost for the appraisal of all property in the county for 1980 in order to get the rolls up to market value, common knowledge of the large cost to all counties at that time would indicate such expenditure was a heavy burden on the taxpayers. To require the appraisal district to go back and do the same for 1979 would certainly cost no less, and such expenditure would redound only to the benefit (if any) of the few taxpayers who are parties plaintiff in this lawsuit. This, then, must be the reason for the legislative creation of a "grandfather" clause so that pre-Tax Code disputes may be settled by the procedures in effect at the time. Point of error number one is overruled.

■ Point of error number II–P is covered in part by matters recited under the first point. We additionally note that the Supreme Court referenced *Whelan v. State*, 155 Tex. 14, 282 S.W.2d 378 (1955), *Republic Ins. Co. v. H. Park Independent School Dist.*, 141 Tex. 224, 171 S.W.2d 342 (1943), and *Electra Independent Sch. Dist. v. W.T. Waggoner Estate*, 140 Tex. 483, 168 S.W.2d 645 (1943) in its instructions on remand of the original class action in this matter. We have examined those cases and compared their requirements with the actions taken by the reconvened board. We find no remarkable deviations in the application of the preexisting, preserved statutes (i.e., articles 7346, 7347, 7348 and 7349) which would require a reversal of this cause.

We also note that nowhere in the record can we find that plaintiffs have proved (or even alleged) the actual value of any of the properties owned by them and subject to assessment in 1979. We, therefore, have no standard of comparison in the instant cause whereby we can determine any harm to plaintiffs growing out of the procedures followed. In light of the agreed fact that defendants are now undertaking to collect taxes on only 23.33% of the full value (as of 1979), harm cannot be presumed from the record before us. Even if plaintiffs could successfully point out certain technical errors in the procedures followed, we must be guided by the principle enunciated in *Shell Petroleum Corporation v. Grays*, 131 Tex. 515, 114 S.W.2d 869, 870 (1938):

An appellant or plaintiff in error may not complain of errors which do not injuriously affect him, or which merely affect the rights of others.

*Id.* Some day the taxes must be paid on properties belonging to plaintiffs. Absent egregious harm, today seems as good a day as any. Point of error II–P is overruled.

■ Point of error III–P undertakes to invoke constitutional protection to thwart the completion of the Parker County 1979 tax rolls. Plaintiffs have cited no authority, and we find none, to support the proposition that the constitutional amendment leading to the present Property Tax Code destroyed all proceedings that were taking place on the date of its passage. Orderly transition from the old methods to the new was mandated in subsection (d) of new article 8, section 18, which provides:

The Legislature shall prescribe by general law the methods, timing, and administrative process for implementing the requirements of this section.

TEX. CONST. art. 8, sec. 18(d). Section 311.022 of the Code Construction Act requires "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." TEX.GOV'T CODE ANN. sec. 311.022 (Vernon Pamph.Supp. 1987). There being no "retrospective" provision in the Property Tax Code regarding reassessment of property, this article of the state constitution does not bar assessing 1979 property by 1979 laws. Point of error III–P is overruled.

■ Original defendants in the injunction suit cross-filed against the plaintiffs to collect the 1979 taxes, together with statutory penalties and interest. This was originally attempted in the class action suit but the effort failed because no proper service was had on the plaintiff class. However, the Supreme Court specifically held that in upholding the injunction granted to the class, the right of the county to ultimately sue for its taxes was not abridged. Although the county successfully resisted the injunctive relief sought herein and although the county obtained judgment for its taxes, the county has directly appealed from the judgment on allegation that it should have been awarded interest, penalty and collection cost and that no court costs should have been assessed against the county (the defendants).

We have already held that the proper method for assessing taxes of plaintiffs would be governed by articles 7346–48, Texas Civil Statutes, as they existed at the time the class action injunction was issued by the trial court. Article 7347 provides in pertinent part:

[T]he commissioners court ... shall cause the taxes to be computed and extended at the tax rate in effect for each separate year mentioned in said list; and,

in addition thereto, shall cause to be added a penalty equal in amount to what would be six per cent interest to the date of making said list from the date such properties would have been delinquent had same been properly rendered by the owner thereof at the time and for the years stated in said list. . . .

Former TEX.REV.CIV.STAT.ANN. art. 7347 (Vernon 1960).

Plaintiffs were shown to be the owners of the described property in 1979. They were not required to pay taxes until March 1, 1983. All other taxpayers were required to meet earlier deadlines. We find no authority for holding that the taxing unit cannot recover the sum denoted as "penalty" in article 7347, supra, representing interest on the *actual* tax money owed so as to compensate the taxing unit for not having such tax money available to pay its obligations.

Plaintiffs cite the opinions by the Supreme Court and by this court in the class action suit as authority for holding them harmless for *any* type of penalty or interest. We do not find this argument persuasive. The class action suit resulted in an injunction against the collection of illegally assessed taxes. Any concomitant penalties or interest would necessarily fall because no tax became delinquent. We find the same theory expressed by the Supreme Court of Texas in *Electra I.S.D.*, 168 S.W.2d at 652–53 near the end of the opinion where the collection of *taxes, penalty, interests and costs* was authorized on retrial as to any properties found to be *properly* assessed; the collection of *taxes, penalty and interest* was forbidden where assessment was *invalid;* and, as to the invalidly assessed property, no bar was raised to further proceedings under articles 7346, *et seq.*

In the instant cause, injunctive relief was denied by the trial court. The assessment procedure eventuated. Plaintiffs were called upon to pay their taxes. By failure to pay such sums (as assessed and computed) within the periods allowed by law, plaintiffs have placed themselves in no different position than any taxpayer who chooses not to pay his taxes on time. The filing of an unsuccessful lawsuit does not excuse the tax nor suspend accompanying penalty or interest.

Plaintiffs make much in their briefs concerning an alleged tender by personal check of the amounts due as taxes but omitting penalties, interest, etc. It now appears that such action is of no avail to them. To be effective, a tender must be for all that is due at the time of the tender. Such was not the case here. The tax collector was not required to accept such offer of less than the proper total. All this is in accord with the excellent opinion on this very subject appearing in *Dickinson Independent Sch. Dist. v. McGowan*, 533 S.W.2d 127 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ).

In light of the foregoing holdings, we find that the first "final judgment" entered by the trial court on February 20, 1985, correctly sets forth the accumulated taxes, penalties, interest and statutory fees due and owing by the various plaintiffs to the taxing authorities involved as of that date. Interest has continued to accrue since that date at statutory amounts. We are remanding this cause to the trial court to recompute the amounts owing, based on the February 20, 1985 judgment. Point of error 1–D is sustained.

Lastly, Parker County complains of the charging of costs. This point is well taken. Since no relief was granted as to the plea for injunctive relief, no costs shall be taxed to the successful party in that regard. As to the cross-action to collect taxes, etc., due and owing, the charging of costs is foreclosed initially by articles 7297 and 7333, Texas Civil Statutes and ultimately by section 33.49(a), Texas Property Tax Code. Point of error 2–D is sustained.

The judgment of the trial court is affirmed in part and reversed and remanded in part for entry of judgment not inconsistent with this opinion.