United States Court of Appeals,
Fifth Circuit.
Nos. 91–1582, 91–7397.

IRVING INDEPENDENT SCHOOL DISTRICT, Plaintiff–Appellee Cross–Appellant,

County of Dallas, Intervening Plaintiff–Appellee Cross–Appellant,

v.

PACKARD PROPERTIES, et al., Defendants,

The Federal Deposit Insurance Corporation, as Receiver for Vernon Savings and Loan Association, FSA, Defendant–Appellant Cross–Appellee.

CARROLLTON–FARMERS BRANCH INDEPENDENT SCHOOL DISTRICT and City of Farmers Branch, Plaintiffs–Counter Defendants–Appellees,

v.

JOHNSON & CRAVENS, 13911, INC., et al., Defendants,

Federal Deposit Insurance Corporation, as Manager of the FSLIC Resolution Fund, as Successor to the Federal Savings and Loan Insurance Corporation, as Receiver for First Savings Association of Burkburnett, Texas, Defendant–Counter Plaintiff–Appellant.

Sept. 1, 1992.

Appeals from the United States District Court for the Northern District of Texas.

Before WISDOM, REYNALDO G. GARZA, and JONES, Circuit Judges.

WISDOM, Circuit Judge.

In these consolidated cases, the statutory privilege protecting the FDIC (Federal Deposit Insurance Corporation) from certain state tax penalties intersects the ability of state and local taxing authorities to enforce valid pre-existing liens on properties that the FDIC has acquired. When the FDIC acquires property, section 15(b) of the Federal Deposit Insurance Act, 12 U.S.C. § 1825(b), exempts the FDIC itself from having to pay penalties incurred by earlier property owners who have not paid their ad valorem taxes. Because this privilege does not absolve the property of liens related to the unpaid taxes, however, we hold that the liens in this case remain enforceable against the property. We therefore affirm the district court's finding that liens securing ad valorem taxes, penalties, and interest already in place when the FDIC acquired the property remain attached to that

property and remain enforceable after the FDIC disposes of the property. We also affirm the district court's finding that the charges denominated as penalties, interest, and collection costs under Chapter 33 of the Texas Property Tax Code are in fact penalties for which the FDIC cannot be held liable.

## I. BACKGROUND

### A. *Irving I and II*

The property in question in *FDIC v. Irving Indep. School Dist. and County of Dallas,* No. 91–1582, has had successive yearly liens imposed on it to secure the payment of ad valorem taxes. Under Texas law, after 13 months of nonpayment, the lien securing the payment of ad valorem taxes also secures an additional sum to cover statutory interest, penalties, collection costs, and attorney's fees. On January 1, 1986, Irving Independent School District ("Irving") placed the first of its five liens on the property. On January 1, 1987, Dallas County placed the first of its four liens on the property. The ownership of the property itself has travelled the now familiar course from real estate developer to savings and loan to the Federal Savings and Loan Insurance Corporation (FSLIC) to the FDIC. The FDIC sold the property on December 31, 1990.

The taxing authorities brought suit against the FDIC in state court to recover unpaid ad valorem real property taxes as well as additional statutory charges associated with that nonpayment (penalties, interest, costs of collection, and attorneys' fees). The FDIC removed the case to federal district court. In a memorandum decision filed July 18, 1990 (*Irving I* ),[1] the district court granted partial summary judgment in favor of the FDIC, holding that the FDIC was not liable for the additional charges denominated as penalties and interest. In a later decision issued April 18, 1991 (*Irving II* ),[2] the district court held that the liens securing unpaid taxes, penalties, and interest for the years 1986 through 1988 were not extinguished by the later FDIC acquisition. In spite of the federal

---

[1]*Irving Independent School District v. Packard Properties, Ltd.,* 741 F.Supp. 120 (N.D.Tex.1990).

[2]*Irving Independent School District v. Packard Properties, Ltd.,* 762 F.Supp. 699 (N.D.Tex.1991).

ownership of the property during 1989 the district court also preserved the lien for unpaid 1989 ad valorem taxes. The district court reasoned that, although the FDIC held title to the property on January 1, 1989, the applicable amendments to § 1825 were enacted after the lien date, and could not be applied retroactively. The only year for which all liens were abolished was 1990. The FDIC has filed a timely appeal from the court's holding in *Irving II*. Although the FDIC does not contest the validity of the liens as security for the taxes themselves, it does contest them insofar as they secure the payment of charges constituting penalties. Irving and Dallas County appeal the holdings in *Irving I*. They argue that the charges for nonpayment are not penalties but charges representing the cost to them of nonpayment of ad valorem taxes. The FDIC has not paid any local property tax on the *Irving* property since it became the owner.

B. *Carrollton*

In *Carrollton–Farmers Branch Indep. School Dist. v. FDIC,* No. 91–7397, the School District and the City of Farmers Branch sued the owner of the property and the holder of a second lien on the property, the First Savings and Loan Association of Burkburnett, Texas, for unpaid ad valorem taxes, interest, penalties, and collection costs due on property for the years 1983 through 1986. On January 16, 1987, the FSLIC was appointed receiver for First Savings and Loan. The FSLIC foreclosed on the lien, acquired the property, and then sold it. A condition of that sale was the FSLIC's indemnification of the buyer for "any and all claims, costs, and expenses arising out of" tax claims made by the School District or the Town. The property was also sold "subject to all liens which survived Lone Star's foreclosure and subject to any and all tax liens on the property". The FDIC, which replaced the FSLIC in 1989, has tendered payment of the delinquent base taxes.

After lengthy proceedings in federal district court, to which the FSLIC had removed the taxing authorities' suit, the sole question in *Carrollton* was condensed to the same question at issue in *Irving:* Whether 12 U.S.C. § 1825(b) required the extinction of liens securing penalties for the nonpayment of ad valorem taxes on property later acquired by the FDIC? The district court granted

summary judgment in favor the taxing authorities based on its opinion in *Irving*.  The FDIC appeals.

## II. ARE PRE–EXISTING LIENS EXTINGUISHED

The FDIC argues that 12 U.S.C. § 1825(b)(3) requires that pre-existing liens, to the extent that they support penalties, be extinguished once the FDIC obtains ownership of the property.  "It is axiomatic that "[t]he starting point in every case involving construction of a statute is the language itself" ".[3]

A. *Reading § 1825(b)*

It is well established that "a State may not, consistent with the Supremacy Clause, U.S. Const, Art VI, cl 2, lay a tax "directly upon the United States' ".[4]  It is also well established that Congress may waive this immunity by statute.

The 1989 amendments to 12 U.S.C. § 1825 extended the FDIC's immunity from state taxation, previously limited to its corporate function, to its role as receiver.  As for real property held by the FDIC as receiver, the amendment subjected the property to state and local ad valorem taxation.

As amended, § 1825(b)(1) provides in pertinent part:

**(b) Other exemptions**

*When acting as a receiver,* the following provisions shall apply with respect to the Corporation:

(1) The Corporation including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local

---

[3]*Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985), (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975)).

[4]*United States v. New Mexico,* 455 U.S. 720, 733, 102 S.Ct. 1373, 1382, 71 L.Ed.2d 580 (1982), (quoting *Mayo v. United States,* 319 U.S. 441, 447, 63 S.Ct. 1137, 1140, 87 L.Ed. 1504 (1943)).

taxing authority, *except* that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed....[5]

The FDIC does not contest the obvious meaning of subsection § 1825(b)(1) or its own responsibility for paying the base taxes on property it owns.[6] What it does contest is the scope of subsections 1825(b)(2) and 1825(b)(3).

§ 1825(b)(2) reads:

No property of the corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.[7]

We find, as did the district court, that "[t]he plain language of this statute means no involuntary lien attaches to property held by the FDIC when the FDIC is acting as a receiver".[8] The wording of the statute is inherently prospective in scope. It does not exclude liens attached to the property before the FDIC owned it.

Congress used the future tense to exclude only those liens that would otherwise attach *after* the FDIC acquired a property. As this Court has noted:

When the FDIC assumes control of an institution, the assets are what they are—negotiable instruments, contracts, real property, and so on. We agree that the FDIC should not be disadvantaged by the circumstances of its assumption of control, but this policy does not require giving the FDIC the ability to transmute lead into gold.[9]

---

[5]12 U.S.C.A. § 1825(b)(1) (West 1989) (emphasis added).

[6]Nevertheless, for some reason the FDIC has not paid those taxes on the property involved in *Irving*.

[7]12 U.S.C.A. § 1825(b)(2) (West 1989).

[8]*Irving II,* 762 F.Supp. at 703.

[9]*Sunbelt Savings, FSB Dallas, Texas v. Montross,* 923 F.2d 353, 357 (5th Cir.1991) *rev'd on other grounds and remanded,* 944 F.2d 227 (5th Cir.1991) (en banc).

The result of § 1825(b)(2) is that liens may not attach to that property while the FDIC owns it, but a property previously encumbered must remain so.

Finally, we look at § 1825(b)(3), which reads:

> The Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.[10]

The FDIC argues that this subsection requires the extinction of any lien on property owned by the FDIC to the extent that the lien secures penalties. The district court found that the subsection means that the FDIC cannot be forced to pay penalties, including any penalties imposed because of the failure of previous owners to pay taxes. The FDIC agrees with this interpretation, but argues that the district court did not go far enough. The FDIC argues that, unless pre-existing liens (to the extent that they support penalties) are extinguished, the lower price the FDIC will receive for the property upon re-sale indirectly results in the imposition of those penalties against the FDIC.

The flaw in the FDIC's argument is revealed by the following quotation from their opening brief in *Carrollton:* "The reduction in the value of the receivership's assets occasioned by the liens has the same effect as the imposition of a direct liability on the receivership ...". It is true that, were the taxing authorities to impose new liens on the property after the FDIC obtained ownership[11], those liens would reduce the value of the assets and would have the same effect as imposing the penalty directly upon the FDIC. That is not the case, however, in this litigation. The liens at issue here were in place before the FDIC obtained ownership of the properties. Thus, these liens have not caused a reduction in the value of the receivership's assets. These assets have the same value today that they had when the FDIC obtained them.

---

[10]12 U.S.C.A. § 1825(b)(2) (West 1989).

[11]As already mentioned, however, § 1825(b)(2) prevents the taxing authorities from imposing new liens on property owned by the FDIC.

Section 1825(b)(3) prevents local taxing authorities from forcing the FDIC to pay penalties for the failure of previous owners to pay property taxes. Nevertheless, Congress chose to leave property acquired by the FDIC in the same condition as the FDIC found it. It did not disturb an understanding expressed in several of this Court's opinions: "[T]he FDIC is protected from the disadvantages attendant upon its role, but the nature of the assets the FDIC receives from the institutions remains unchanged."[12]

B. *Analogizing Related Law*

Although we find that the language of § 1825 clearly expresses Congressional intent, we will address some of the FDIC's arguments and analogies in support of a contrary reading. We reject these analogies.

First, the FDIC's heavy reliance on *Lee v. Osceola & Little River Road Improvement Dist.*[13] is misplaced. *Lee* is inapposite because it involved liens the taxing authorities sought to attach to property while it was owned by the federal government. Both *Irving* and *Carrollton,* on the other hand, involve valid liens that attached to the property years before the FDIC became the owner of that property. A further distinction is that, in *Lee,* the liens related to improvements made by the government upon the property. In this case, the liens relate to pre-existing rights held by the Texas taxing authorities to ensure that the money they are due is eventually paid in full. It should then come as no surprise to the FDIC that these liens already attached to the property when the FDIC was appointed receiver for that property are sought to be enforced when the FDIC later sells the property. Valid pre-existing liens do not become the property of the FDIC when it is acting as a receiver, and consequently, any reconsolidation and resale plans must include these liens as part of their calculus.

The FDIC enjoys sovereign immunity from state tax penalties to facilitate its reconsolidation

---

[12]For example, see *Sunbelt Savings,* 923 F.2d at 356.

[13]268 U.S. 643, 45 S.Ct. 620, 69 L.Ed. 1133 (1925).

of failed banks; in addition to the Constitutional requirements, an admirable goal underlies that immunity. Whenever the FDIC can reduce the charges connected to property it has acquired, it can increase the value of the property, decrease its own losses, expedite resale, and save the nation's taxpayers and insured depositors a great deal of money. The ability to extinguish liens securing unpaid tax penalties incurred by earlier owners would certainly further those goals. But to endow the FDIC with such a valuable tool would come at a great cost to state and local taxing authorities. Using this case as an example, local governments and school districts have operated with reliance on the recovery of unpaid ad valorem taxes and penalties through liens on real property. To deny them their justified expectations of receiving those funds would threaten their ability to operate their schools. The policy arguments in this case are strong on both sides. Perhaps in consideration of these countervailing interests, Congress limited its grant of power to the FDIC.

The inability to extinguish such liens is one of the many indirect burdens the FDIC would rather not bear as it labors to cleanse the savings and loan Augean stables. As the district court noted in *Irving,* "[The FDIC]'s inability to market the asset represents but one aspect of the grim reality that faces the FDIC upon the failure of a financial institution".[14]

In addition to *Lee,* which at least addresses governmental liability for tax liens, the FDIC also cites an entirely unrelated area of the law where a different outcome prevails. The FDIC argues that its role as receiver of failed thrifts is analogous to that of a trustee in a liquidation under Chapter 7 of the Bankruptcy Code because both the trustee and receiver are appointees rather than voluntary purchasers. The FDIC further notes that 11 U.S.C. §§ 724(a) and 726(a)(4) allow a trustee to avoid liens for tax penalties that were incurred by the debtor before bankruptcy. The FDIC then asks this Court to recognize that these bankruptcy provisions are evidence of "a longstanding equitable policy" that underlies the receivership context as well. The two bankruptcy provisions prove only that Congress was aware of its ability to word its 1989 amendments in accordance with § 1825 had it so

---

[14]*Irving II,* 762 F.Supp. at 703.

desired. If congressional silence is a legitimate element in legislative history, the absence of appropriate language is indicative of a conscious decision on the part of Congress not to expand the scope of the FDIC's immunity rather than indicative of an implicit policy supposedly underlying these two disparate sets of regulations.

Finally, in the middle of its aggressive effort to avoid liability for local ad valorem taxes and to extinguish pre-existing liens securing those taxes and penalties for their nonpayment, the FDIC issued a favorable administrative interpretation of the law. On May 31, 1991—almost two months after the district court's opinion in *Irving II*—the FDIC issued a "Legal Memorandum in Support of FDIC and RTC Statements of Policy Regarding Payment of State and Local Taxes". On June 4, 1991, the FDIC issued its "Statement of Policy Regarding the Payment of State and Local Taxes".

Although the district court requested both parties to offer their interpretations of 12 U.S.C. § 1825(b) before it decided *Carrollton,* the court discounted the value of the FDIC's interpretation. We review the district court's legal decisions, including the proper interpretation of a statute, *de novo.*[15] We conclude that in both *Irving,* in which the FDIC interpretation was not an issue, and in *Carrollton,* in which it was, that the district court reached the correct result.

A court may discount the FDIC's Legal Memorandum when reliance upon an agency interpretation is unnecessary because the statutory language the agency interprets is unambiguous. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress".[16]

Discounting the FDIC interpretation is appropriate for another important reason. The FDIC's

---

[15]*Afco Steel, Inc. v. Tobi Engineering, Inc.,* 893 F.2d 92, 93 (5th Cir.1990).

[16]*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781–2782, 81 L.Ed.2d 694 (1984); *see also Rust v. Sullivan,* —— U.S. ——, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991).

Legal Memorandum was issued during pending litigation. It was only after *Irving,* in fact after the

FDIC had filed its notice of appeal in *Irving,* that the agency published its interpretation of the statute.

The District of Columbia Circuit has addressed the deference due a similarly delayed and conveniently

favorable agency interpretation:

> Deference is due the authoritative interpretation an agency gives to its own regulations or to the statute it administers.... To carry much weight however, the interpretation must be publicly articulated some time prior to the agency's embroilment in litigation over the disputed provision.[17]

We conclude that the FDIC's Legal Memorandum should be given no deference, not only because

of the clarity of the federal statute, but because the memorandum's strategically timed

publication—especially when the statutory language is clear—imprints its contents with the stamp

of biased opportunism.

## III. PENALTIES UNDER TEXAS TAX LAW

The taxing authorities in *Irving* contest the district court's holding that interest and collection

costs associated with unpaid taxes are penalties from which the FDIC is shielded by § 1825(b)(3).

A. *Interest as a penalty*

To determine the meaning of penalties under the Texas Property Tax Code we first look to

the rule of *Jones v. Williams.*[18] In that case, after a lengthy historical analysis of the nature of interest

and penalties charged for nonpayment of taxes in Texas, the Texas Supreme Court held that Article

7336, the precursor to Texas Tax Code §§ 33.01 and 33.07, provided for a penalty rather than a

charge for interest. The court wrote that

> the impositions made for delinquency in rendering property for taxation, and for failure to pay taxes, whether these impositions are denominated "penalties," "interest," "forfeitures," or

---

[17]*Nordell v. Heckler,* 749 F.2d 47, 48 (D.C.Cir.1984).

[18]121 Tex. 94, 45 S.W.2d 130 (Tex.1931).

whether prescribed without definition or name, are all in reality penalties imposed for delinquency or failure of duty, and all enacted in aid of the state's revenue, rather than as charges made by the state for the use or detention of its money. In other words, the exactions are "penalties" rather than "interest" in the commercial or statutory sense.[19]

The taxing authorities contend that *Jones* was unique: it arose during the Great Depression and must be considered in the context of that time of travail. The effects of the Great Depression may have given rise to the controversy in *Jones;* it did not, however, provide the basis for the outcome. The *Jones* opinion was founded upon a "carefully considered ... history of [Texas] tax legislation, from the first act of the Republic to the law [there] involved."[20]

This Court's opinion in *Reconstruction Finance Corporation v. Texas,*[21] further weakens the argument that *Jones* is either invalid or inapplicable.[22] In *Reconstruction Finance* this Court interpreted Article 7336. The court found that "[o]bviously, Article 7336 is a penalty statute and the penalties and interest which are authorized thereunder are no part of the tax."[23] The Court went on to cite *Jones* as definitive support for its interpretation.

*Jones* sought to determine "whether or not the interest exactions ... [were] to be regarded as interest eo nomine, imposed and demanded by the state as compensation for the detention of its money," or as penalties.[24] The answer for the *Jones* court was that any such interest was in the nature of a penalty. *Jones* reached into Texas history to identify a solid tradition of punishment as the

---

[19]*Id.* 45 S.W.2d at 133.

[20]*Id.*

[21]229 F.2d 9 (5th Cir.), *cert. denied* 351 U.S. 907, 76 S.Ct. 695, 100 L.Ed. 1442 (1956).

[22]Nor do we find that a later Texas Supreme Court opinion, *Kubena v. Hatch,* 144 Tex. 627, 193 S.W.2d 175 (1946), overruled *Jones.* The taxing authorities ask us to adopt this implausible position. Even if we were to analogize the very different context of *Kubena,* which considered a narrow question of Texas homestead law, to the penalty provisions of Texas property tax law, we could not ignore the continued citation of *Jones* by the Texas Supreme Court long after it issued *Kubena.*

[23]*Reconstruction Finance,* 229 F.2d at 12.

[24]*Jones,* 45 S.W.2d at 133.

explanation for the exaction of interest for the nonpayment of taxes. This tradition is crumbling. In *Spindletop Oil and Gas Co. v. Parker County,*[25] a Texas appellate court found that "the sum denoted as "penalty' in article 7347 ... represent[ed] interest on the actual tax money owed so as to compensate the taxing unit for not having such tax money available to pay its obligations."[26] The new direction adopted by *Spindletop* will surely represent the position that will ultimately prevail in the Texas Supreme Court. Nevertheless, for purposes of this case, *Jones* and *Reconstruction Finance* still control.[27]

The Texas legislature has recently confirmed that the longstanding interpretation of Texas interest charges as penalties may be nearing its end. *Spindletop*'s conception of interest as compensation for the use or the lost use of money has been codified in an amendment to Texas Tax Code § 33.01(c). That amendment, effective on August 26, 1991, provides that "interest payable under this section is to compensate the taxing unit for revenue lost because of the delinquency".[28] The amendment shows the Texas legislature's desire to reverse *Jones* as it might affect § 33.01(c), and to treat interest imposed under that subsection as interest, and not as a penalty.

As we note, however, the amendment did not become law until August 26, 1991, long after both these cases were decided. We must, therefore, decide whether to give the amendment a retroactive application in this case.

"The general rule is that there exists a presumption that an act is intended to operate prospectively and not retroactively. If there is any doubt, the intention will be resolved against

---

[25]738 S.W.2d 715 (Tex.App.—Fort Worth 1987).

[26]*Id.* at 722.

[27]Even if an opinion of a Texas appellate court did control here, *Spindletop* would not mandate a reversal of *Irving I:* it interpreted a different portion of the Texas Property Tax Code and it failed to mention either *Jones* or *Reconstruction Finance,* the two cases we are told it overruled.

[28]Tex.Tax Code Ann. § 33.01(c) (West Supp.1992).

retrospective operation of a statute."[29]

> An act will not be applied retrospectively unless it appears by fair implication from the language used that it was the intent of the Legislature to make it applicable to both past and future transactions. In ascertaining legislative intent, the entire act must be examined, not just isolated provisions in the act.[30]

We find that the sentence added to § 33.01(c) made a substantive change in Texas tax law by redesignating what was once a penalty as interest and, therefore, partially overruling *Jones* and *State v. Kingham.*[31] Because we also find no indication that the Legislature intended the amendment to § 33.01(c) to be applied retroactively, we shall follow the presumption in favor of prospective application: the amendment is inapplicable to these consolidated cases.

B. *Costs of collection as a penalty*

The taxing authorities' contention that § 33.07 is not a penalty provision is wrong. § 33.07(a) reads:

> A taxing unit or appraisal district may provide, in the manner required by law for official action by the body, that taxes that remain delinquent on July 1 of the year in which they become delinquent incur an additional *penalty* to defray costs of collection, if the unit or district or another unit that collects taxes for the unit has contracted with an attorney pursuant to Section 6.30 of this code. The amount of the *penalty* may not exceed 15 percent of the amount of taxes, penalty, and interest due.[32]

As support, the taxing authorities rely on an unpublished opinion written by a federal bankruptcy judge who held:

---

[29]*Ex Parte Abell,* 613 S.W.2d 255, 258 (Tex.1981); *see also Gov't Personnel Mutual Life Insurance Co. v. Wear,* 151 Tex. 454, 251 S.W.2d 525 (1952).

[30]*Id.* at 258; *see also Merchants Fast Motor Lines v. Railroad Commission of Texas,* 573 S.W.2d 502, 505 (Tex.1978); *State v. Humble Oil & Refining Co.,* 141 Tex. 40, 169 S.W.2d 707 (1943); *Gayle v. Lockhart,* 167 S.W.2d 230 (Tex.Civ.App.—Waco 1942, writ ref'd).

[31]361 S.W.2d 191, 193 (Tex.1962).

[32]Tex.Tax Code Ann. § 33.07(a) (West 1982) (emphasis added).

Section 33.07 of the Texas Property Tax Code represents a penalty imposed by the State to recover an actual pecuniary loss rather than to punish delinquent taxpayers. The provision contemplates the recovery of statutory attorneys' fees which compensates the taxing authorities for the pecuniary loss that results from collection fees paid to outside counsel. But for the delinquency in the payment of such taxes, no outside collection fees would be incurred by the state.[33]

The *Soraiz* opinion ignores controlling Texas Supreme Court precedent. The Texas Supreme Court has held:

The case of Jones v. Williams ... decides that the penalty and interest added to delinquent taxes is not an incident of the taxes, but is a separate and distinct item provided by the Legislature as a punishment for failure to pay taxes, prior to delinquency, and therefore a "penalty" within the meaning of the Constitution.[34]

In the eyes of the Texas Supreme Court, therefore, *Jones* means that charges labeled penalties—even if they compensate collection costs—are penalties. The text of the provision contains two separate references to collection costs as penalties. We find the statute to be capable of only one interpretation: § 33.07 is a penalty statute.

## IV. CONCLUSION

We AFFIRM the district court's holdings in *Irving I and II* and in *Carrollton.*

---

[33]*In re: Roy Soraiz and Rosemary Soraiz,* No. 88–01741–H5–7 (Bankr.S.D.Tex.1989).

[34]*State v. Kingham,* 361 S.W.2d 191, 193 (Tex.1962).