204 F.3d 407 (2nd Cir. 2000)
 NATIONAL LOAN INVESTORS L.P., Plaintiff-Appellant-Cross-Appellee,
v.
TOWN OF ORANGE; ARTHUR WILLIAMS, Defendants,
WATER POLLUTION CONTROL AUTHORITY, Defendant-Appellee-Cross-Appellant.
 Nos. 434, 827 Docket Nos. 99-7281, 99-7309
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: October 8, 1999
Decided: February 25, 2000
 
 Appeal from a final judgment in the United States District Court for the District of Connecticut (Martinez, M.J.), ruling that the defendant Water Pollution Control Authority did not violate the Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. 1825(b)(3), when it assessed an additional fee for late sewer charges in respect of a period in which the property was mortgaged to a bank for which the Federal Deposit Insurance Corporation was receiver.
 Affirmed.
 FREDERIC S. URY, Westport, CT (Deborah M. Garskof, Ury & Moskow, L.L.C., on the brief), for Plaintiff-Appellant-Cross-Appellee.
 JOHN W. COLLERAN, New Haven, CT (John W. Colleran, P.C., Jeffrey M. Donofrio, Ciulla & Donofrio, LLP, on the brief), for Defendant-Appellee-Cross-Appellant.
 Before: : JACOBS, CALABRESI, and SOTOMAYOR, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 One section of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") provides that the Federal Deposit Insurance Corporation ("FDIC"), when acting as a receiver, "shall not be liable for any amounts in the nature of penalties or fines." 12 U.S.C. 1825(b)(3). The FDIC acted as receiver of an insolvent bank that held a mortgage on a parcel of land in Orange, Connecticut, which mortgage was sold by the FDIC to plaintiff National Loan Investors, L.P. ("National Loan"). After effecting foreclosure, National Loan paid various accrued sewer charges and related charges imposed by defendant Water Pollution Control Authority ("the Authority"), but brought suit in the United States District Court for the District of Connecticut (Martinez, M.J.), seeking a declaratory judgment that 1825(b)(3) barred the assessment of an additional 18% charge for the time period in which the FDIC was receiver.
 
 
 2
 Following a bench trial, the district court concluded that the assessment was a penalty, but ruled nevertheless that the assessment did not violate 12 U.S.C. 1825(b)(3), and that National Loan was liable for the $114,127.57 assessment because the FDIC never held title to the property.
 
 
 3
 On appeal, National Loan argues that the district court erred when it held that 12 U.S.C. 1825(b)(3) allows the assessment of penalties with respect to property held by the FDIC as mortgagee.
 
 
 4
 The Authority cross-appeals, arguing that the district court erred in finding that the contested charge constituted a penalty. We agree with this argument, and affirm the judgment on the ground that National Loan failed to carry its burden of showing that the contested assessment, or any part of it, was in the nature of a penalty.
 
 BACKGROUND
 
 5
 Connecticut Savings Bank made a $850,000 loan to Northeast Enterprises and other parties ("Northeast"), evidenced by a note dated June 23, 1989, and secured by property at 95 Marsh Hill Road in Orange, Connecticut.
 
 
 6
 In 1990, the Town of Orange, acting through the Authority, assessed various properties, including 95 Marsh Hill Road, in order to pay for the installation of new sewer lines. The assessment against 95 Marsh Hill Road was in the principal amount of $134,400. Pursuant to Connecticut General Statutes 7-253, Northeast elected to pay the assessment in annual installments with interest of 7.64%, the interest rate on the bond that financed the sewer construction project.
 
 
 7
 Subsequently, Northeast defaulted on its loan from Connecticut Savings Bank, and state-court foreclosure proceedings were commenced. While the foreclosure action was pending, Connecticut Savings Bank was declared insolvent. The FDIC was appointed receiver on November 14, 1991, intervened in the foreclosure action, and removed it to federal court.
 
 
 8
 In September 1995, the FDIC sold its interest in the property to National Loan, assigning to it the note and mortgage. National Loan substituted itself as plaintiff in the pending federal court foreclosure action, won a judgment of strict foreclosure, and took title to the property on January 15, 1996.
 
 
 9
 From November 1, 1991--around the time Connecticut Savings Bank became insolvent--through August 1997, no one paid the sewer assessment or the corresponding bond interest. During this period, interest accrued in the amount of $100,186.63. The Authority also levied an additional $135,575.40 charge amounting to a fee of 18% per year on principal and interest; a portion of that assessment is at issue on this appeal.
 
 
 10
 The Authority properly recorded each lien accruing against the property, and National Loan eventually remitted the arrears of installment payments and the bond interest, as well as the additional 18% charge, except for the period from November 14, 1991 (when the FDIC became the receiver for Connecticut Savings Bank) through September 1995 (when National Loan purchased the note and mortgage from the FDIC), asserting that federal law barred the assessment while the FDIC owned the mortgage. This unpaid charge amounted to $114,127.57.
 
 
 11
 The Authority refused to waive the contested charge, and National Loan brought this action in the District of Connecticut, seeking a declaration that the additional fee could not be imposed for the period in which the FDIC held a mortgage interest in the property.
 
 
 12
 At the bench trial on July 31, 1998, the Authority characterized the charge as interest legitimately imposed for the late installment payments pursuant to Connecticut General Statutes 7-254 and 12-146, while National Loan characterized the charge as a penalty prohibited by 12 U.S.C. 1825(b)(3).
 
 
 13
 The district court found that the Authority had already assessed interest at the bond rate of 7.64%, and that there was no evidence indicating "that the additional charge bears any relation to actual losses incurred by the [Authority], when a property owner fails to pay a sewer assessment in a timely fashion." National Loan Investors, L.P. v. Town of Orange, No. 3:97-CV-01579, Tr. of Evidentiary Hr'g at 6 (D. Conn. Feb. 12, 1999). The district court therefore concluded that the charge was "punitive in nature, intended not to compensate the [Authority] for delay in payment, or for the use of money, but rather to punish delinquent taxpayers and discourage future delinquencies." Id. at 7. Accordingly, the court held that the charge was a penalty of the kind for which the FDIC is not liable.
 
 
 14
 The court nevertheless concluded that the assessment of this penalty did not violate 12 U.S.C. 1825(b)(3) because the FDIC's interest in the property was as mortgagee rather than as titleholder, and because the FDIC therefore "was never liable for any of the charges which were assessed against the property by the [Authority]." Id. at 8. "[B]ecause the contested charge was levied against the subject property itself," the district court decided that "liability for that charge passed with the chain of title, directly from [Northeast] to the plaintiff, National Loan Investors." Id. The district court cautioned that otherwise the statute "would appear to allow any property owner who has a mortgage with a failed bank, whether or not that mortgage is in default, to claim the same immunity from all penalties assessed against his or her property, merely because the FDIC becomes the receiver for the bank." Id.
 
 
 15
 This appeal followed.
 
 DISCUSSION
 
 16
 Section 219 of FIRREA, Pub. L. No. 101-73, 103 Stat. 183, 261, codified at 12 U.S.C. 1825(b), strengthened the hand of the FDIC in its role as receiver for failed financial institutions. The provision is set out here in full:
 
 
 17
 When acting as a receiver, the following provisions shall apply with respect to the [FDIC]:
 
 
 18
 (1) The [FDIC] including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the [FDIC] shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.
 
 
 19
 (2) No property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any involuntary lien attach to the property of the [FDIC].
 
 
 20
 (3) The [FDIC] shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.
 
 
 21
 12 U.S.C. 1825(b).
 
 
 22
 * The first question presented on this appeal is whether National Loan enjoys the exemption set forth in 12 U.S.C. 1825(b)(3)--which provides that the FDIC "shall not be liable for any amounts in the nature of penalties or fines." We review the district court's interpretation of the statute denovo. See, e.g., United States v. Koh, 199 F.3d 632, 636 (2d Cir. 1999).
 
 
 23
 Subsumed in that question are at least three others. But for the reasons that follow, we decline to answer them.
 
 
 24
 First: Does the FDIC enjoy its freedom from liability under 1825(b)(3) when the FDIC is a mortgagee rather than the titleholder? The plain language of 12 U.S.C. 1825(b)(3) does not speak in terms of particular interests in property. Section 1825(b) broadly states that subsections (1), (2), and (3) shall apply when the FDIC is acting as a receiver, and subsection (3) forecloses liability for "any amounts in nature of penalties or fines," without qualification. The examples stated in subsection (3) include some obligations that only an owner would usually be required to pay, such as personal property taxes, but also includes obligations, such as recording or filing fees, which are also payable by a mortgagee. Accordingly, the penalties or fines prohibited by 12 U.S.C. 1825(b)(3) are not linked explicitly or implicitly to any particular interests in property. On the other hand, 1825(b)(3) speaks in terms of the FDIC's liability, and is arguably ambiguous as to whether the penalties accrue nevertheless and can be collected from someone else, such as the titleholder or that person's successors.
 
 
 25
 Second: Assuming that the FDIC as mortgagee did enjoy freedom from liability for penalties, does that dispensation inure to the benefit of its successors such as National Loan? Unless the benefit of the FDIC's exemption from liability inures to the benefit of its successors, the penalty assessment could potentially reduce the value of the FDIC's interest because the subject property would be sold subject to the burden of penalties. That result would arguably impair the purpose of 1825(b) to "reduce the charges connected to property [the FDIC] has acquired," thereby permitting the FDIC to "increase the value of the property, decrease its own losses, expedite resale, and save the nation's taxpayers and insured depositors a great deal of money." Irving Indep. Sch. Dist. v. Packard Properties, 970 F.2d 58, 62-63 (5th Cir. 1992). Thus, the Seventh Circuit has ruled that an assignee "acquired whatever it was that [the receiver] held at the time of assignment, complete with whatever limitations on encumbrances [the receiver] enjoyed as a result of FIRREA." RTC Commercial Assets Trust v. Phoenix Bond & Indem. Co., 169 F.3d 448, 458 (7th Cir. 1999); cf. Federal Deposit Ins. Co. v. Newhart, 892 F.2d 47, 50 (8th Cir. 1989) (reaching similar conclusion with respect to 12 U.S.C. 1823(e)). The answer to this question may not necessarily decide this appeal, however, because a further question would remain.
 
 
 26
 Assuming that National Loan, as successor to the FDIC, enjoys the FDIC's exemption from liability, does National Loan, post-foreclosure, bear the penalties as successor to the titleholder? The Seventh Circuit has answered in the affirmative in a similar case, finding that while 1825(b)(3) relieves receivers and their successors of personal liability for penalties, it does not "eliminate the liability of the property itself for the charges." Phoenix Bond, 169 F.3d at 458. The district court, thinking along the same lines, concluded that "because the [penalty] was levied against the subject property itself, liability for that charge passed with the chain of title, directly from the Northeast Enterprise's Group to the plaintiff, National Loan Investors." We decline to decide whether the district court's approach was correct, however, because the question is close, and, on this record, avoidable.
 
 
 27
 Moreover, the question may be more complicated than it was when it was presented to the district court. National Loan's reply brief on appeal argues, apparently for the first time: (i) that Connecticut is a "title state," in which a mortgagee acquires title to real property subject to the mortgagor paying off the promissory note; and (ii) that the FDIC as mortgagee therefore had title to the property subject to payment, contrary to the district court's premise that the charges were properly assessed against the property because the FDIC lacked title. At oral argument, both sides agreed that Connecticut is a title state. However, while it is possible that this feature of Connecticut law on mortgages has some impact on the analysis, it is not clear what that impact is. Neither party has fully briefed the issue on appeal, and the issue was never presented to the district court. Indeed, the district court decided the case on a set of stipulated facts, including that "neither Connecticut Savings Bank nor the FDIC ever took title to the subject property." National Loan Investors, L.P. v. Town of Orange, No. 3:97-CV-01579, Tr. of Evidentiary Hr'g at 4 (D. Conn. Feb. 12, 1999). Because we can resolve this case on another ground, we proceed to do so, and leave these three questions undecided.
 
 B
 
 28
 We hold that the exemption of 1825(b)(3) is unavailable to National Loan in this case because, notwithstanding National Loan's concession at oral argument that it bore the burden of establishing at trial that the contested charge was a penalty, it failed to do so. (Neither party briefed the issue.)
 
 
 29
 The Authority imposed the contested charge pursuant to Connecticut General Statutes 7-254, which provides in relevant part that:
 
 
 30
 Any assessment of benefits or any instalment thereof, not paid within thirty days after the due date, shall be delinquent and shall be subject to interest from such due date at the interest rate and in the manner provided by the general statutes for delinquent property taxes. Each addition of interest shall be collectible as a part of such assessment.
 
 
 31
 Conn. Gen. Stat. 7-254(a) (emphasis added). The section of the Connecticut General Statutes that governs the interest charge at issue on this appeal is 12-146, which defines a "tax" as "each property tax and each instalment and part thereof due to a municipality as it may have been increased by interest, fees and charges," and sets the interest rate at 18%:
 
 
 32
 [T]he delinquent portion of the principal of any tax shall be subject to interest at the rate of eighteen per cent per annum from the time when it became due and payable until the same is paid . . . . Each addition of interest shall become, and shall be collectible as, a part of such tax. Interest shall accrue at said rate until payment of such taxes due notwithstanding the entry of any judgment in favor of the municipality against the taxpayer or his property.
 
 
 33
 12-146.
 
 
 34
 The Connecticut statute thus characterizes the contested charge as "interest" or a "tax," while the Authority's billing form characterizes the charge as a penalty. Neither characterization is dispositive. See Monroe v. 837 Main St. Corp., 45 Conn. Supp. 283, 291, 721 A.2d 996, 1000 (Super. Ct. 1997) ("In evaluating this issue, the court appreciates the view that although a legislative body may label a pecuniary charge as being interest, the charge may nevertheless be so excessively onerous either in a general sense or within the meaning of 12 U.S.C. 1825(b)(3) that the legislative designation must be rejected and the charge must be viewed as a penalty.").
 
 
 35
 Whether a charge constitutes a penalty for purposes of 1825(b)(3) is a federal question informed by state law. See Irving Indep. Sch. Dist. v. Packard Properties, 741 F. Supp. 120, 123 (N.D. Tex. 1990) (citing Reconstruction Fin. Corp. v. Beaver County, Pa., 328 U.S. 204, 207-10 (1946)), aff'd, 970 F.2d 58 (5th Cir. 1992); see also Phoenix Bond, 169 F.3d at 457 (following Irving). The Superior Court of Connecticut has construed 12-146 and held that assessments of the kind at issue in this case are not in the nature of penalties because, among other reasons, the 18% rate "was imposed primarily to ensure that municipalities receive fair compensation for delayed payment of taxes in light of fluctuating market rates, inflation, and collection costs." Monroe, 45 Conn. Supp. at 292, 721 A.2d at 1000.
 
 
 36
 Informed by state law, we are inclined to agree with the Monroe court's conclusion.
 
 
 37
 The purpose of a penalty (in the present context) is to serve as an incentive to prompt payment. See Phoenix Bond, 169 F.3d at 457 ("States do not assess penalties for the purpose of raising revenue; they assess them so that delinquent tax debtors will be deterred the next time around from ignoring their legal obligations."); Irving, 970 F.2d at 64 (distinguishing "penalties imposed for delinquency or failure of duty, and all enacted in aid of the state's revenue" from "charges made by the state for the use or detention of its money") (internal citations and quotation marks omitted). Obviously, a percentage surcharge in any amount on an unpaid obligation can be characterized as an inducement to payment, and the higher the surcharge, the greater the inducement. In this case, it is safe to say that the assessment is not a penalty to the extent, if any, that it compensates the Authority for the loss of use of money caused by non-payment. (Compensation for other kinds of losses may or may not be penalties.)
 
 
 38
 Because Northeast elected to pay the sewer assessment over time rather than by lump sum without delay, Northeast (and its successors) incurred a 7.64% interest charge corresponding to the interest that the Town of Orange, through the Authority, was obligated to pay on the bonds it issued to finance the sewer system. See Conn. Gen. Stat. 7-253. These assessments have been collected. Yet it is clear that even so, the Town was less than fully compensated. We assume that unless the Town defaulted on its bond, the Town was forced to make the principal and interest payments from some source of revenue or credit, and thereby incurred an expense or other detriment for the use of the money. Therefore, at least some portion of the disputed 18% charge compensates the Authority for the use of money during the period of non-payment.
 
 
 39
 The Authority did not undertake at trial to justify the 18% charge as compensatory; at the same time, National Loan did not undertake to show by what margin, if any, the assessment of the 18% charge operates as a penalty. Here, it is agreed that it was National Loan's burden to show, in the totality of the circumstances, that the disputed charge, in whole or in some measurable part, was imposed for purposes other than compensation, and was punitive in nature.
 
 
 40
 Accordingly, we conclude that National Loan failed to shoulder its burden of proving that the Authority imposed a penalty on 95 Marsh Hill Road during the FDIC's receivership. National Loan therefore is unable to invoke the exemption embodied in 12 U.S.C. 1825(b)(3), and must pay the contested charge in full. We express no view, however, as to whether, on another record, charges imposed under 12146 might be shown to be a "penalty" within the meaning of 1825(b)(3).
 
 CONCLUSION
 
 41
 The judgment of the district court is affirmed.