## TOWN OF MONROE *v.* 837 MAIN STREET CORPORATION ET AL.

Superior Court Judicial District of File No. CV940318470
 Fairfield at Bridgeport

Memorandum filed July 9, 1997

 

*William J. Varese*, for the plaintiff.

*Diserio, Martin, O'Connor & Castiglioni*, for the named defendant.

*Diserio, Martin, O'Connor & Castiglioni*, and the *Federal Deposit Insurance Corporation*, for the defendant Federal Deposit Insurance Corporation.

*Quatrella & Rizzo*, for the defendant S. Kenneth Dinardo et al.

STEVENS, J. This is a foreclosure action instituted by the plaintiff, the town of Monroe, seeking to foreclose on property owned by the named defendant, 837 Main Street Corporation, in order to satisfy unpaid tax liens. The defendant Federal Deposit Insurance Corporation (FDIC), acting as receiver for Mechanics and Farmers Savings Bank, holds a mortgage on the property.

The court has issued a preliminary order granting foreclosure by sale and has scheduled a sale date in September, 1997. A remaining dispute between the plaintiff and the FDIC is whether the 18 percent interest that the plaintiff is demanding to be paid on its principal debt may be asserted against the FDIC. These parties have filed briefs and this issue is now joined for disposition.

The plaintiff argues that General Statutes § 12-146 allows it to recover 18 percent interest per annum on the principal amount of unpaid taxes. As its tax liens are

superior to the FDIC's mortgage interest, the plaintiff insists that its debt, including the interest charge, must be paid from the sale proceeds prior to any distribution to the FDIC.

On the other hand, the FDIC argues that the 18 percent interest authorized by § 12-146 is so high that some part of it must be viewed as being a "penalty," rather than an "interest" charge. According to the FDIC, federal statute 12 U.S.C. § 1825 (b) (3) exempts the FDIC from being required to pay charges imposed by municipalities which are in the nature of fines or penalties.[1]

In response to the FDIC's argument, the plaintiff argues that the interest rate is not a penalty, and in any event, the exemption asserted by the FDIC only applies when the FDIC is the owner of the property and not when it is merely a lienholder. The court agrees with the plaintiff that the interest rate authorized under § 12-146 is not a penalty, and thus, the court will reserve for another day whether the penalty exemption may be asserted by the FDIC when it only has a mortgage interest in the property being taxed.

The precise question presented is whether the interest charged under § 12-146 is a "penalty" within the meaning of 12 U.S.C. § 1825 (b) (3). This is a federal question which is substantially governed by the statutory language and legislative intent of § 12-146.

"In construing any statute, [courts] seek to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 73, 689 A.2d 1097 (1997). "It is an axiom of statutory construction that legislative

---

[1] Title 12 of the United States Code, § 1825 (b) (3), provides: "The Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due."

intent is to be determined by an analysis of the language actually used in the legislation." (Internal quotation marks omitted.) Id., 73–74. When statutory language "is plain and unambiguous, [the courts] need look no further than the words themselves because [the courts] assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) Id., 74.

Section 12-146 provides in pertinent part that "[i]f any tax due . . . is not paid in full . . . [when] it became due . . . the whole or such part of such instalment as is unpaid shall thereupon be delinquent and shall be subject to interest from the due date of such delinquent instalment. . . . [T]he delinquent portion of the principal of any tax shall be subject to interest at the rate of eighteen per cent per annum from the time when it became due and payable until the same is paid . . . ."

The express language of the statute characterizes the 18 percent per annum amount as "interest." Interest may be generally defined as fair compensation for a delay in payment or for the use of money. As defined in Ballentine's Law Dictionary (3d Ed. 1969), interest is the "compensation allowed by law, or fixed by the parties, for the use, detention, or forbearance of money. . . ." The most obvious legislative purpose for the imposition of interest on unpaid taxes is to compensate municipalities for the pecuniary losses associated with not having timely receipt of tax payments. On the other hand, a "penalty" is viewed as a punishment imposed on a wrongdoer without reference to the actual damage sustained. See Ballentine's Law Dictionary (3d Ed. 1969). Thus, the legislature's use of the word "interest" in § 12-146, rather than the word "penalty" evidences an intent to compensate rather than to punish.

The legislative history is also instructive. See *State* v. *Ledbetter*, 240 Conn. 317, 337, 692 A.2d 713 (1997).

("[i]n recent years [the Supreme Court has] repeatedly approved references to testimony before legislative committees in order to shed light on legislative intent" [internal quotation marks omitted]). There have been several amendments to § 12-146. The purpose of these amendments was to raise periodically the interest rate charged against delinquent taxes. Two recent amendments are relevant here. The first occurred in 1981, when the interest rate was raised from 12 to 15 percent per annum. According to Senator Michael L. Morano, a sponsor of a proposed amendment to § 12-146,[2] the reason behind raising the interest rate was to "make it easier for local legislative bodies to respond to the constant yo-yo effect on prime rate." 24 S. Proc., Pt. 3, 1981 Sess., p. 847. In support of Morano's amendment, Senator Philip L. Robertson stated that "the amendment . . . leaves it up to the local town and certainly in a time where the interest rates are fluctuating to such a dramatic extent that it should not be left up to the Connecticut General Assembly and this Senate to, on a yearly basis, have to react." Id., p. 850.

In opposing Morano's amendment to graduate the interest rate from 12 to 18 percent based upon the status of the delinquent party, Senator Steven C. Casey stated: "I feel that the 15 per cent penalty on a steady rate right now would be an improvement over what we've already had and I don't think the amendment is necessary." Id., p. 847. In further opposition to the proposed amendment, Senator Richard F. Schneller argued that "[t]he reason that most taxpayers are delinquent is that they simply don't have the money to pay their tax bills

[2] Morano's amendment to the proposed Senate bill "would maintain the delinquent fee of bottom 12 per cent and extend it to 18 per cent. This would discourage some of the larger taxpayers from being delinquent by failing to pay their taxes and gaining on investing money in the money market." 24 S. Proc., Pt. 3, 1981 Sess., p. 847. The amendment failed to pass, and the interest rate was raised to a one level fixed rate of 15 percent per annum for all taxpayers.

and to penalize them more than fifteen per cent I think is onerous. . . . I think that taking this penalty to 15 per cent is high enough." Id., pp. 848–49.

In 1982, some of the same issues were revisited as the General Assembly heard testimony and debated whether to raise the interest rate on delinquent taxes from 15 to 18 percent. The Joint Standing Committee on Finance, Revenue and Bonding heard testimony from James Troup, the town manager of Watertown, who spoke in favor of increasing the interest rate based on contemporary interest rates on bank loans.[3] Favorable testimony was also heard from Frank Driscoll, a director of the Connecticut Conference of Municipalities, who characterized the increased interest rate on delinquent taxes as "an incentive for the prompt payment of taxes." Conn. Joint Standing Committee Hearings, Finance, Revenue and Bonding, Pt. 1, 1982 Sess., p. 97.[4]

The thrust of this legislative history indicates that the intent behind the raising of the interest rate on delinquent taxes to its present rate of 18 percent per annum under § 12-146 was to match rising or fluctuating

---

[3] "I think the concept here is very simple, that the State of Connecticut right now is allowed to charge a higher delinquent rate for state taxes that are delinquent. The rate that the state charges [is] much closer to lending rates that prevail now. Towns simply want that same option. To charge more than what we're allowed to charge now, which is 15%." Conn. Joint Standing Committee Hearings, Finance, Revenue and Bonding, Pt. 1, 1982 Sess., p. 67, remarks of Troup.

[4] "Interest [rates] on delinquent property taxes should serve as an incentive for the prompt payment of taxes. The municipalities do not have the staff or the resources to address all delinquent cases, and therefore must rely upon an effective interest rate to avoid excessive delinquencies. The present 15% rate for delinquent property taxes provides those who don't pay their taxes a reason to continue to refrain from payment. [Fifteen percent] is well below the prevailing interest rate for bank loans and credit card accounts. . . . And lastly, if we tie the interest rate on delinquent property taxes to the statutory rate, I won't have to be back here next year on this matter requesting a rate change to reflect the market conditions." Conn. Joint Standing Committee Hearings, supra, p. 97, remarks of Driscoll.

prime rates. Although opponents of certain amendments to bills offered in the Senate in 1981 characterized the interest rate as a penalty, the legislature was more concerned at that time, and especially in 1982, with raising the interest rate to a level where despite fluctuating prime market rates, a flat interest rate could be set in place to provide fair compensation to municipalities without yearly legislative review.

Furthermore, under General Statutes § 12-150, the General Assembly imposed a $100 charge which it clearly designated as being a "penalty." See General Statutes § 12-150. Thus, a comparison of § 12-150 and § 12-146 provides additional evidence that an interest rate and not a penalty is imposed by § 12-146 because when the General Assembly intends to impose a penalty, it explicitly uses the word "penalty" to express this intention. See generally *Stein* v. *Hillebrand*, 240 Conn. 35, 40, 688 A.2d 1317 (1997) (when textual ambiguity exists, legislative intent may be discerned from "legislative history, legislative policy and the relationship of the statute at issue to existing legislation").

In reaching its conclusion, the court has reviewed numerous cases involving different statutory schemes, from different time periods, and reaching conflicting conclusions.[5] The prevailing theme of these cases is that deference must be given to the legislature's characterization of the compensation. " 'In the face of a statute which denominates each percentage interest, it is more reasonable to assume that the Legislature fixed each rate as fair compensation for delay and expense occasioned by the nonpayment of the taxes under particular

---

[5] Compare the holding in *In re Koger Properties, Inc.*, 172 B.R. 351 (Bankr. M.D. Fla. 1994) (Florida statute setting interest rate at 18 percent for delinquent real estate taxes unfair as city could not have invested that money elsewhere for same return), which was criticized and rejected in *In re Liuzzo*, 204 B.R. 235 (Bankr. N.D. Fla. 1996) (same statute not so excessive as to constitute penalty).

circumstances.' " *In re Navis Realty, Inc.*, 193 B.R. 998, 1010 (Bankr. E.D.N.Y. 1996); accord *In re Beardsley & Wolcott Mfg. Co.*, 82 F.2d 239 (2d Cir. 1936).

Particularly in regard to the approximate interest to be charged on taxes, many factors may legitimately be considered by the taxing authority which may differ from the factors considered by private lending institutions. " 'It is common knowledge that interest rates vary not only according to the general use value of money but also according to the hazard of particular classes of loans. Delinquent taxpayers as a class are a poor credit risk . . . .' " *In re Navis Realty, Inc.*, supra, 193 B.R. 1012. " 'A rate of interest on tax delinquencies which is low in comparison to the taxpayer's borrowing rate . . . is a temptation to use the state as a convenient, if involuntary, banker by the simple practice of deferring the payment of taxes.' " Id. " 'Another variable is the amount necessary to compensate for the trouble of handling the item. The legislature may include compensation to the state for the increased costs of administration in the exaction for delay in paying taxes without thereby changing it from interest to penalty.' " Id. The taxes here represent liens that are initially unsecured and depend on the value of the property at the time of the enforcement, and thus may be unrecoverable. While lenders have the opportunity to evaluate the value of a proposed security, taxing authorities do not. Similarly, private lenders may impose various protections for their loans, including mortgage insurance, hazard insurance, and title insurance, which are unavailable to taxing authorities. See *In re Liuzzo*, 204 B.R. 235, 240 (Bankr. N.D. Fla. 1996).

Furthermore, while the bankruptcy cases relied upon by the FDIC provide a helpful analogy toward deciding whether § 12-146 constitutes a penalty, they are distinguishable because the emphasis of these cases is on the provisions of the Bankruptcy Code, 11 U.S.C. § 1129

(b) (2), which require the Bankruptcy Court to determine the "present value" of payments being made over time under a plan of reorganization. The task here is not to determine whether an 18 percent per annum rate of interest is necessarily fair or wise in terms of present market valuations, but whether the General Assembly intended for 18 percent per annum to act as interest rather than a penalty and whether the imposition of this charge is reasonably premised on compensatory, rather than on punitive factors. " '[W]e are not concerned with the wisdom of the statute. The rates fixed under the taxation and police powers of the state were doubtless governed by mixed financial and social policies. The policies were matters for the Legislature, and if it declared any rate which was within the range fixed as compensation for the use of money by private agreement and denominated it as "interest," we think there should be every presumption that it was such in fact.' " *In re Navis Realty, Inc.*, supra, 193 B.R. 1011. In evaluating this issue, the court appreciates the view that although a legislative body may label a pecuniary charge as being interest, the charge may nevertheless be so excessively onerous either in a general sense or within the meaning of 12 U.S.C. § 1825 (b) (3) that the legislative designation must be rejected and the charge must be viewed as a penalty. The charge imposed under § 12-146, however, is not so grossly outside the " 'range fixed as compensation for the use of money by private agreement' " that the court should disregard the General Assembly's characterization of the rate as being an interest charge. Id.; accord *In re Liuzzo*, supra, 204 B.R. 239–40 (holding that 18 percent interest on delinquent real property taxes under Florida law is not in nature of penalty).

In summary, based on the plain language of § 12-146, the statute's legislative history, and the fact that the General Assembly explicitly imposed penalties where

it saw fit within the General Statutes, the court concludes that the interest imposed on delinquent taxes is compensatory, and not punitive in nature. The 18 percent interest per annum was imposed primarily to ensure that municipalities receive fair compensation for delayed payment of taxes in light of fluctuating market rates, inflation, and collection costs. Accord *Orange* v. *Liner*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV92041692 (January 21, 1994) (*Curran, J.*) (holding that for purposes of former bankruptcy statute, 11 U.S.C. § 57j, charge imposed on delinquent taxes is for "interest" and not "penalty").

For all the foregoing reasons, therefore, the plaintiff may calculate the amount of its debt by including interest at the rate of 18 percent per annum as authorized under § 12-146, and the debt, including this interest, shall be paid from the proceeds of the foreclosure sale prior to any distribution to other defendants, including the defendant FDIC.