**S/N1 REO LIMITED LIABILITY COMPANY, Plaintiff,**

v.

**CITY OF NEW LONDON, ex rel. Janice BALLESTRINI, in her capacity as Tax Collector; Barbara Berry, in her capacity as Tax Assessor; and Clark Van Der Lyke, in his capacity as City Clerk, Defendants.**

**City of New London, Third Party Plaintiff,**

v.

**Federal Deposit Insurance Corporation, as receiver of Old Stone Federal Savings Bank, Third Party Defendant.**

**No. Civ.A. 3:96CV1601JCH.**

United States District Court, D. Connecticut.

Sept. 28, 2000.

---

Thomas W. Boyce, Jr., Jane Richardson, Faulkner & Boyce, P.C., New London, CT, Edward S. Weil, Eric S. Rein, James R. Edmunds, Schwartz, Cooper, Chicago, IL, for S/N1 Reo ltd. Liability Co.

Michael W. Sheehan, Conway & Londregan, Now London, CT, for City of New London.

Michael W. Sheehan, Conway & Londregan, New London, CT, Philip E. Masquelette, FDIC, Legal Div., East Hartford, CT, Charlotte M. Kaplow, Washington, DC, for Federal Deposit Ins. Corp.

**RULING ON MOTION FOR SUMMARY JUDGMENT [DKT. NO. 87] AND MOTION TO DISMISS FOR LACK OF SUBJECT–MATTER JURISDICTION [DKT. NO. 90]**

HALL, District Judge.

Now before the court is the third-party defendant FDIC's ("FDIC") motion for summary judgment [Dkt. No. 87] and the defendant City of New London's ("City") motion to dismiss for lack of subject-matter jurisdiction [Dkt. No. 90]. Some description of the procedural background of this case is in order. The defendant City of New London previously moved to dismiss the Amended Complaint of the plaintiff S/N1 REO Limited Liability Company ("S/N1") on the basis of the jurisdictional bar of the Tax Injunction Act. *See* Dkt. No. 31 at 3. In a written ruling on February 11, 1999, this court denied that motion on the ground that "the plaintiff qualifies for the federal instrumentalities exemption" from the Tax Injunction Act.[1] *See* Dkt. No. 48 at 9. However, the court offered the following caveat in its decision:

> This court reaches the conclusion that it has jurisdiction with some hesitancy. There appear to be some issues of law on the merits that could affect whether there is jurisdiction. Further, the court is not satisfied that the factual record is fully developed concerning the plaintiff: its relationship to the FDIC and the extent to which the plaintiff's success in this action would further the government's interests. Prior to defendant filing the Motion to Dismiss at the court's suggestion (Arterton, J.), the parties had filed but not fully joined cross Motions for Summary Judgment. It is this court's view, that although it determines it has jurisdiction on the record before it, that the issue of jurisdiction may very well be part of its consideration of a renewed motion for summary judgment. 5A Wright & Miller, Federal Practice and Procedure: Civil 2d § 1350, at 235. Certainly, much of what plaintiff's counsel represented on the record during oral argument about the purpose and function of the plaintiff and its relationship to the FDIC and [Resolution Trust Corporation ("RTC")], should be briefed and made the subject of an affidavit as appropriate.

1. Familiarity with that Ruling is assumed.

*Id.* at 9–10 (footnote omitted). In a footnote, the court noted:

> For example, if 'property of the corporation' in 12 U.S.C. § 1825(b)(2) does not include mortgage interests as the plaintiff claims, then this case would be more akin to *Bank of New England [Old Colony v. Clark,* 986 F.2d 600 (1st Cir.1993) ] and serious questions concerning jurisdiction would be presented. The case cited at oral argument by the plaintiff, *Matagorda County v. Law,* 19 F.3d 215, 219 (5th Cir.1994), does suggest this issue will resolve in plaintiff's favor. Assuming the defendant chooses to raise this issue, it should have an opportunity to brief it.

*Id.* at 9 n. 5. The parties subsequently submitted extensive cross-motions for summary judgment on all the claims of the Amended Complaint [Dkt. No. 35]. However, at oral argument on June 21, 2000, counsel for the FDIC indicated that it was its position that S/N1 was not a "federal instrumentality" for the purposes of the exception to the jurisdictional bar of the Tax Injunction Act, 28 U.S.C. § 1341.[2] The FDIC also implicitly argued as much in its Memorandum in Support of its motion for summary judgment. *See* Dkt. No. 60 at 16–18.

On July 18, 2000, the court denied the cross-motions for summary judgment with leave to refile pending the court's determination of subject-matter jurisdiction, indicating that "[t]he court now has serious questions as to whether the Tax Injunction Act, 28 U.S.C. § 1341, bars jurisdiction over S/N1's claims and whether S/N1 qualifies for the judicially-created federal instrumentality exception to the operation of the Tax Injunction Act." Dkt. No. 86. The parties have submitted briefing [Dkt. Nos. 83, 84, & 85] on the jurisdictional issues raised at oral argument and in the aforementioned ruling denying the cross-motions for summary judgment.

On the basis of new information about S/N1's relationship with the FDIC and the FDIC's representations on this matter since its impleader into the suit, as discussed herein, the court now finds that the Tax Injunction Act bars S/N1's claim and that S/N1 does not qualify for the federal instrumentalities exception to the operation of the Tax Injunction Act. As such, the FDIC's Motion for Summary Judgment [Dkt. No. 87] and City's Motion to Dismiss [Dkt. No. 90] are GRANTED.

## I. STANDARDS

On a motion to dismiss for lack of subject-matter jurisdiction, a court must accept all factual allegations in the complaint as true and draw all inferences from those allegations in plaintiff's favor. *Jaghory v. New York State Dept. of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). The court may not dismiss a complaint unless "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitled him to relief." *Id.* Where the existence of subject-matter jurisdiction turns on a factual issue, however, the court is permitted to look beyond the complaint itself and may consider evidence outside the pleadings. *See United States v. Vazquez,* 145 F.3d 74, 80 (2d Cir.1998); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 108 (2d Cir. 1997). The burden of proving jurisdiction is on the party asserting it. *See Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996).

Summary judgment is only appropriate when there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 639 (2d Cir.2000) (citing *Fagan v. New York State Elec. & Gas Corp.,* 186 F.3d 127, 132 (2d Cir.1999)). The burden of showing that no genuine factual dispute exists rests upon the moving party, *see Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residen-*

---

**2.** The FDIC was added as a third-party after the court's February 1999 Ruling.

*tial Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994)), and in assessing the record to determine if such issues do exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721 (2d Cir. 1994). However, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998).[3]

## II. DISCUSSION

### A. Absent an Exception, the Tax Injunction Act Bars S/N1's Claims.

 The Tax Injunction Act, 28 U.S.C. § 1341, provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." It is well-settled that "[t]he Act prohibits declaratory as well as injunctive relief." *Barringer v. Griffes,* 964 F.2d 1278, 1280 (2d Cir.1992) (citation omitted).

 It is also well-settled that, "[t]o come within the statutory ban, the remedy available in the state courts must provide the taxpayer with a full hearing and judicial determination at which [the taxpayer] may raise any and all constitutional objections to the tax." *Id.* (citation and internal quotation marks omitted). "The Supreme Court has ruled that the 'plain, speedy and efficient remedy' exception to the act was designed only to require that the state remedy satisfy certain minimal procedural criteria.... Thus, the state remedy is measured according to procedural rather than substantive criteria, ... and the criteria are to be construed narrowly.... The opportunity need not be the best or most convenient one, ... and the taxpayer's failure to take advantage of the available state procedures does not mean that the state remedy is insufficient." *Finizie v. City of Bridgeport,* 880 F.Supp. 89, 93 (D.Conn.1995) (citations omitted).[4]

The court finds that S/N1's claims challenge the assessment, levy, or collection of a state or local tax, such that S/N1 is seeking "a federal-court ruling on a local tax matter, precisely the type of suit the Tax Injunction Act was designed to limit as to both declaratory and injunctive relief." *Bernard v. Village of Spring Valley,* 30 F.3d 294, 297 (2d Cir.1994).[5] As courts

---

3. The court notes that S/N1 has failed to provide any documentary support for its claims of jurisdiction or even a statement of material facts in dispute as required by Local Rule 9(c)(2).

4. The *Finizie* court further summarized the requirements for "a plain, speedy and efficient remedy" under the Tax Injunction Act:

> The Supreme Court has held that a state procedure is adequate if it requires taxpayers to pay the tax and seek a refund through state administrative and judicial procedures in which the constitutional claims can be raised.... A state remedy is not ineffective even if it requires a multiplicity of suits.... A state remedy that imposes no unusual hardship on a taxpayer, such as one that requires unnecessary expenditures of time or energy, is also efficient.... A state remedy is not inadequate because it requires

exhaustion of administrative remedies.... However, if a state court remedy is uncertain or speculative, it is not plain or efficient.... The state remedy need not be the best remedy available or even equal the remedy which might be available in federal court.

*Finizie v. City of Bridgeport,* 880 F.Supp. 89, 94 (D.Conn.1995) (citations omitted).

5. On the basis of 12 U.S.C. § 1825(b), S/N1 seeks declaratory judgment on three counts:

(1) "On Count I, declaring that the City's tax liens for the years 1993 and 1994 are void and of no force and effect";
(2) "On Count II, declaring that the City's liens or claims, if any, for the years 1993 and 1994 with respect to such penalties, interest in the nature of penalties, or other charges are void and of no force and effect"; and

in this district have already found, Connecticut provides an adequate remedy at law to challenge the assessment and collection of the taxes at issue in S/N1's Amended Complaint. *See J & M Autobody v. Gavin*, 27 F.Supp.2d 115, 117 (D.Conn. 1998); *see also Finizie*, 880 F.Supp. at 94–95.[6]

In fact, S/N1 admits that Count I is barred by the Tax Injunction Act unless an exception applies. Dkt. No. 93 at 5–6; *see also J & M*, 27 F.Supp.2d at 117 ("The State's filing of a tax lien against plaintiffs is clearly an act to collect taxes."). Moreover, despite S/N1's argument to the contrary, Count II of the Amended Complaint challenging certain tax liens as penalties and not taxes or interest and Count III seeking a reassessment of the value of S/N1's real property are similarly barred by the Tax Injunction Act.

■ The application of the Tax Injunction Act to bar · Count III of S/N1's Amended Complaint requires no extended discussion. S/N1's request in Count III for declaratory relief authorizing a reassessment of S/N1's real estate under 12 U.S.C. § 1825(b)(1) falls within the clear language of the Tax Injunction Act and would, contrary to the mandate of the Tax Injunction Act, involve the court in impermissible interference with the assessment and collection of a state or local tax. *See RTC Commercial Assets Trust 1995–NP3–1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 454 (7th Cir.1999).

■ In Count II, S/N1 relies upon 12 U.S.C. § 1825(b)(3) to argue that the interest City seeks to collect as secured by liens is a penalty which may not be collected from S/N1 as assignee of the RTC. Section 1825(b)(3) provides that "[t]he Corporation shall not be liable for any amounts *in the nature of penalties* or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." 12 U.S.C. § 1825(b)(3) (emphasis added). City seeks to collect interest accrued on the delinquent property taxes at the statutory rate of 18 % provided by Conn.Gen. Stat. § 12–146. S/N1 argues here and in its prior memorandum in support of its motion for summary judgment on Count II [Dkt. No. 72] that this is "in the nature of [a penalty]" and cites as support excerpted statements from the legislative history of section 12–146, the fact that 18 % is more than double the prevailing rate for bank loans, especially for banks' best customers, and the fact that the legal rate of interest for " '[t]he compensation for forbearance of property loans at a fixed valuation or for money' is 8 % per year." Dkt. No. 93 at 6–7; Dkt. No. 72 at 22–23 (quoting Conn. Gen.Stat. § 37–3a). S/N1 also cites City's Tax Certificate [Dkt. No. 72, Ex. 2], which lists the 18 % rate charges under "PENALTY/INT," which, according to S/N1, proves it is a penalty. *See* Dkt. No. 72 at 22 n. 11. Thus, S/N1 concludes that, "[b]ased on the evidence presented by S/N1 in this case, including current lending rates, the legal rate of interest in Connecticut and the legislative history of the Connecticut statute, there is no doubt that the 18 % charge on delinquent taxes is not an 'interest' statute designed to compensate at market rates, but rather is punitive in nature and, thus, 'in the nature of' a penalty." Dkt. No. 79 at 15 (footnotes omitted).

City challenges the claim that the 18 % interest rate is a penalty and not mere

(3) "On Count III, declaring that Plaintiff is entitled to challenge the City for the assessment of the Property's value and the tax thereon for tax years 1992 through the present." Dkt. No. 35 at 7–8. S/N1's Count I rests upon an interpretation and application of 12 U.S.C. § 1825(b)(2), Count II upon 12 U.S.C. § 1825(b)(3), and Count III upon 12 U.S.C. § 1825(b)(1).

**6.** Furthermore, state courts have concurrent jurisdiction over claims under 12 U.S.C. § 1825. *RTC Commercial Assets Trust 1995–NP3–1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 454 (7th Cir.1999).

interest. City notes that Conn.Gen.Stat. § 12–150, in the same chapter as section 12–146, is entitled "Penalty" while section 12–146 is entitled "Interest." City further cites *37 Huntington Street v. City of Hartford*, No. CV 990590607, 2000 WL 226372 (Conn.Super. Feb.10, 2000), and *Town of Orange v. Liner*, No. CV92 04 16 92S, 1994 WL 33635 (Conn.Super. Jan.21, 1994), as support for the argument that the 18 % rate is interest, not a penalty. City also argues that the legislative history is irrelevant since the statute is clear and unambiguous as to whether it provides for interest or a penalty. *See* Dkt. No. 77 at 10–11.

The Second Circuit has recently addressed this issue in a related setting in deciding whether a charge under section 12–146 was interest or a penalty, the latter of which would be barred from collection by 12 U.S.C. § 1825(b)(3). *See National Loan Investors L.P. v. Town of Orange*, 204 F.3d 407, 411–13 (2d Cir.2000). The Court of Appeals held that, for purposes of section 1825(b)(3), the statute's characterization of the 18 % rate as a tax and interest was not dispositive, nor was the plaintiff's characterization of it as a penalty. *Id.* at 411. "Whether a charge constitutes a penalty for purposes of § 1825(b)(3) is a federal question informed by state law." *Id.* at 412 (citations omitted). Following the reasoning of the Connecticut Superior Court in *Town of Monroe v. 837 Main St. Corp.*, 45 Conn.Supp. 283, 291, 712 A.2d 996 (1997), the Court of Appeals held that the charge under section 12–146 was not a penalty because it was designed to ensure compensation to the municipal taxing authority, and not as a punitive measure. *Id.* The Second Circuit reasoned that "[t]he purpose of a penalty (in the present context) is to serve as an incentive to prompt payment." *Id.* (citations omitted). The Court of Appeals then observed that, "[o]bviously, a percentage surcharge in any amount on an unpaid obligation can be characterized as an inducement to payment, and the higher the surcharge, the greater the inducement." *Id.* However, the Second Circuit concluded

that, "[i]n this case, it is safe to say that the assessment [under section 12–146] is not a penalty to the extent, if any, that it compensates the Authority for the loss of use of money caused by non-payment," while noting that "[c]ompensation for other kinds of losses may or may not be penalties." *Id.*

The Court of Appeals emphasized that the plaintiff had the burden of proving "the disputed charge, in whole or in some measurable part, was imposed for purposes other than compensation, and was punitive in nature." *Id.* The Court of Appeals found the plaintiff failed to carry its burden of proof, while noting that it would "express no view, however, as to whether, on another record, charges imposed under § 12–146 might be shown to be a 'penalty' within the meaning of § 1825(b)(3)." *Id.* at 412–13.

In the instant case, the burden of proving jurisdiction and, specifically, that the Tax Injunction Act does not apply to bar jurisdiction over Count II, is on S/N1. *Malik*, 82 F.3d at 562. Moreover, like the question of whether a charge is in the nature of a penalty or interest for purposes of section 1825(b)(3), "[t]he question whether something is a 'tax' or not for purposes of the [Tax Injunction Act] is ultimately one of federal law, even though [courts] consult state law to understand exactly what a particular charge is." *Phoenix Bond*, 169 F.3d at 457 (citations omitted); *see also Am. Trucking Ass'ns, Inc. v. O'Neill*, 522 F.Supp. 49, 53 (D.Conn.1981) ("The term 'tax under state law' in 28 U.S.C. § 1341 'should be determined as a matter of federal law by reference to the congressional policies underlying the Tax Injunction Act, rather than by adoption of state tax labels developed in entirely different legal contexts.' ").

S/N1 has not carried its burden of proof to show that the 18 % charge under Conn.Gen.Stat. § 12–146 is punitive and not compensatory, and therefore a penalty and not an interest charge or "tax" for

purposes of the Tax Injunction Act. The court first notes that section 12–146 itself indicates that, "[u]nless the context otherwise requires, wherever used in this section, 'tax' includes each property tax and each instalment and part thereof due to a municipality as it may have been increased by interest, fees and charges." Conn.Gen. Stat. § 12–146. "The Connecticut statute thus characterizes the contested charge as 'interest' or a 'tax.'" *National Loan*, 204 F.3d at 411. Yet, neither this language nor City's comparison of the titles of Conn. Gen.Stat. § 12–146 and § 12–150 is dispositive, as the Court of Appeals in *National Loan* instructs. S/N1's citation to rather scant support in the lègislative history is, however, not availing. Moreover, the relative magnitude of the rate under section 12–146 does not provide convincing evidence of any punitive purpose in imposing the charge.[7]

In response to the instant motions, S/N1 simply argues that Count II "merely seeks to declare invalid charges which are in the nature of a *penalty;* Count II does not seek any relief regarding the underlying *tax* levied by the City." Dkt. No. 93 at 6–7 (emphasis in original). S/N1 concludes that "[t]hus, on its face, Count II is outside the scope of the [Tax Injunction Act]." *Id.* at 7. This is so, S/N1 asserts, because "any relief provided by the Court would be predicated on the Court's finding that the challenged charge is a penalty and not a tax." *Id.* The latter statement may be

true, but so is its converse: Were the court to now assume it has jurisdiction, on the basis of S/N1's pleading in Count II that the charge under Conn.Gen.Stat. § 12–146 is in the nature of a penalty and not interest, without further proof for the claims, and then later decide on the merits that the charge is in fact interest and not a penalty, the court would have incorrectly asserted jurisdiction over a claim that the court was barred from deciding by the Tax Injunction Act.

In the face of a Fed.R.Civ.P. 12(b)(1) motion and a motion for summary judgment, S/N1 cannot simply plead that the charges under section 12–146 are in the nature of a penalty and provide no evidence or compelling documentation to demonstrate that the charges are not in fact interest charges.[8] The court must decide whether it has jurisdiction over Count II's challenge to the City's enforcement of section 12–146, and, with guidance from *National Loan*, the Court finds that S/N1 has failed to sustain its burden of proving that the charge under section 12–146 challenged in Count II of the Amended Complaint is in the nature of a penalty and not interest. The court therefore finds that the Tax Injunction Act bars jurisdiction over Count II of S/N1's Amended Complaint.

As such, unless S/N1's suit is otherwise excepted from the Act's operation, the Tax Injunction Act precludes this court from exercising jurisdiction over S/N1's claims.[9]

---

7. S/N1's reliance on *In re Roxbury Residential Assocs., Inc.,* 35 B.R. 348, 350 (Bkrtcy. D.Conn.1983) for the proposition that the 18 % rate under section 12–146 "has no apparent relationship to current market conditions" is similarly unavailing. In *Roxbury,* Judge Schiff was seeking an appropriate measure of the "prevailing market rate," not determining whether a charge based on the 18 % interest rate was imposed for compensatory or punitive purposes. *See id.* at 349–50.

8. The court notes that S/N1 provided nothing more by way of support for its argument that charges under Conn.Gen.Stat. § 12–146 are in the nature of a penalty than (1) citations to *Town of Monroe v. 837 Main St. Corp.,* 45

Conn.Supp. 283, 712 A.2d 996 (1997), (2) citation to the legal rate of interest in Conn. Gen.Stat. § 37–3a, and (3) the denomination of the charge on City's Tax Certificate [Dkt. No. 72, Ex. 2] as "PENALTY/INT."

9. The court also declines, for the reasons aptly presented by the Seventh Circuit in *RTC Commercial Assets Trust 1995–NP3–1 v. Phoenix Bond & Indem. Co.,* 169 F.3d 448, 454 (7th Cir.1999), to accept S/N1's invitation to find that Congress implicitly repealed the Tax Injunction Act by passing FIRREA, 12 U.S.C. § 1825. *See* Dkt. No. 93 at 2–3. As such, regardless of whether S/N1 can invoke the powers and rights conferred by 12 U.S.C. § 1825, an issue which goes to the merits of

The court now turns to the issue of the applicability of the federal instrumentalities exception to S/N1.

## B. S/N1 Does Not Fall Within The Federal Instrumentalities Exception.

■ The so-called federal instrumentalities exception to the Tax Injunction Act allows the federal government and its instrumentalities to evade the jurisdiction bar of the Act in certain circumstances. This exception provides that "[t]he statute does not constrain the power of federal courts if the United States sues to protect itself or its instrumentalities from state taxation." *Arkansas v. Farm Credit Services of Central Arkansas,* 520 U.S. 821, 823–24, 117 S.Ct. 1776, 138 L.Ed.2d 34 (1997); *see also FDIC v. State of N.Y.,* 928 F.2d 56, 58 (2d Cir.1991). In determining what entities qualify for this exception, courts have typically construed the meaning of "federal instrumentality" narrowly. *See Arkansas,* 520 U.S. 821, 117 S.Ct. 1776; *State of N.Y.,* 928 F.2d at 59–60.

The undisputed representations of the FDIC at oral argument and in its papers supporting the FDIC's instant motion for summary judgment make clear that S/N1 does not qualify for treatment as a federal instrumentality so as to escape the operation of the Tax Injunction Act. In the court's prior ruling on subject-matter jurisdiction [Dkt. No. 48], the court noted that certain federal statutes amounted to "congressional indications that government controlled or owned entities are treated like the government" and that these indications were "suggestive of how to analyze 'federal instrumentality' under the judicially created exception to the TIA." Dkt. No. 48 at 6. The court was previously persuaded by the representations of counsel for S/N1 that S/N1 "is not merely an assignee of the RTC, but is majority-owned by the FDIC, as successor of the RTC" and that S/N1 "is seeking to protect the interest of

the federal government in that it is 51 % owned by the FDIC and it is challenging liens under FIRREA[, 12 U.S.C. § 1825(b)]." *Id.* at 5, 9. The court noted that, "[a]lthough little information is provided about the plaintiff, the court can reasonably assume for purposes of this motion that the FDIC created and/or obtained control of [S/N1] pursuant to [the FDIC's] statutory power and authority [under 12 U.S.C. § 1821 to preserve and conserve the assets and property of a failed insured depository institution]." *Id.* at 7. Moreover, the court held that, for purposes of the jurisdictional analysis, the FDIC would fall within the federal instrumentalities exception, and that therefore "the interests asserted by the plaintiff are coterminous with those of the federal government." *Id.* at 8. The court concluded: "This suit is brought· to vindicate the rights of a federal corporation to maintain an interest in property without having liens attach for the purpose of collecting delinquent state taxes. Thus, based on its ownership and purpose, the plaintiff qualifies for the federal instrumentalities exemption." *Id.* at 9.

It is now clear, however, based on the FDIC's own representations, that S/N1's claims are not brought to vindicate the FDIC's rights. Applying the record now before the court to the legal standard for the federal instrumentalities exception articulated in the court's earlier motion, the court finds that the FDIC does not control S/N1 or the present litigation and further that, if it could exercise any such control, the FDIC would not approve this litigation. *See, e.g.,* Dkt. No. 88 at 6 (FDIC has very little control over the RTC Trust of which S/N1 is a subsidiary) and at 8 (FDIC has no property interest in the property of the RTC Trust or of S/N1 and therefore has no standing to bring the present litigation); Dkt. No. 60 at 14–19 (FDIC argues that its statutory rights under 12 U.S.C. § 1825(b) cannot be assigned to S/N1). "The role of the RTC in

S/N1's claims, the invocation of section 1825(b) will not itself evade the jurisdictional bar of the Tax Injunction Act, absent the

application of the federal instrumentalities exception.

the S/N Series transactions was essentially that of a limited partner. As such, it had restricted authority to act directly and its approval or consent was required only in certain specified areas." Declaration of Sandra L. Thompson, at ¶ 14, attached as Ex. A to Dkt. No. 88.

S/N1's relationship with the FDIC and its predecessor, the RTC, is also not sufficient to constitute the sort of ownership interest that would confer federal instrumentality status on S/N1. *See, e.g.,* Dkt. No. 88 at 7–8 (FDIC has no ownership interest in the property of S/N1 by operation of Delaware law). As a Massachusetts district court has recently ruled on precisely this issue with the same plaintiff: "The FDIC's role in the trust is that of a limited partner, restricted to having a right to a specified percentage of the proceeds from the liquidation of the assets it sold into the trust." *S/N1 REO Ltd. Liab. Co. v. City of Fall River,* No. 98–10266–PBS, 2000 WL 1285404, *1 (D.Mass. Aug. 24, 2000), attached as Ex. A to Dkt. No. 92. "Moreover, although the terms of the agreement between the RTC (the FDIC's predecessor) and S/N–1 provide that the RTC assigns to S/N–1 the right to raise certain federal defenses, the agreement does not mention federal instrumentality status and the FDIC insists that it never intended to confer such status on S/N–1." *Id.* at 3; *see also* Dkt. 88 at 9–11; Dkt. 88, Ex. A.3.

The record now before the court thus indicates that S/N1 is not seeking, by the present litigation, to protect the interests of the FDIC, let alone the federal government.[10] Accordingly, based on representations of the FDIC and the submissions of the parties in connection with the instant motions, the court finds that S/N1 is not a federal instrumentality and, as such, no exception applies to prevent the Tax Injunction Act from barring jurisdiction in this court over S/N1's suit for declaratory judgment.

## C. The Jurisdictional Bar of the Tax Injunction Act Was Not Waived.

■ Any claim that consideration of the Tax Injunction Act's jurisdictional bar at this stage has been waived because the parties did not raise or brief the issue on cross-motions for summary judgment, or because of the court's earlier ruling on defendant's motion to dismiss [Dkt. No. 48], is unavailing. "[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level." *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ("Were it in truth a contention that the District Court lacked jurisdiction, we would be obliged to consider it, even as we are obliged to inquire sua sponte whenever a doubt arises as to the existence of federal jurisdiction."). Subject-matter jurisdiction "is non-waivable and delimits federal-court power." *Ruhrgas,* 526 U.S. at 583, 119 S.Ct. 1563; *see also Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,* 858 F.2d 1376, 1380 (9th Cir. 1988) ("The parties have no power to confer jurisdiction on the district court by agreement or consent.") (citations omitted).

■ Moreover, the bar imposed by the Tax Injunction Act may not waived by inaction, by a failure to argue, or by consent of the parties. Rather, the Tax Injunction Act, 28 U.S.C. § 1341, "is a jurisdictional bar that is not subject to waiver, and the federal courts are duty-bound to investigate the application of the Tax Injunction Act regardless of whether the parties raise it as an issue.... The Tax Injunction Act is undergirded by a policy of restraint in the federal courts, which, save limited exceptions, are 'under an equitable duty to refrain from interfering with a State's collection of its revenue' in light

10. As the court noted in its prior ruling on subject-matter jurisdiction, "[t]he FDIC itself has not been viewed in all cases as a federal instrumentality." Dkt. No. 48 at 8 (citations omitted).

of 'the imperative need of a State to administer its own fiscal operations.'" *Folio v. City of Clarksburg,* 134 F.3d 1211, 1214 (4th Cir.1998) (citations omitted); *see also* 17 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* Jurisdiction 2d § 4237, at 642 (1988) (The Tax Injunction Act "withdraws jurisdiction in a particular class of cases ... and, as a jurisdictional limitation, it is not waivable.").

■ Furthermore, the defendant's Amended Third–Party Complaint against the FDIC as third-party defendant will not circumvent the Tax Injunction Act's jurisdictional bar. "[W]hen there is no subject-matter jurisdiction over the original action between plaintiff and defendant, it cannot be created by adding a third-party claim over which there is jurisdiction." 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* Civil 2d § 1444, at 327 n. 31 (1990); *cf. Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 (2d Cir.1983) ("The longstanding and clear rule is that 'if jurisdiction is lacking at the commencement of [a] suit, it cannot be aided by the intervention of a [plaintiff] with a sufficient claim.'" (citations omitted)).[11] The FDIC only became involved in this suit as a third-party defendant in late 1999. Moreover, it is not at all clear that adding the FDIC at an earlier stage, but after filing of the Amended Complaint, would bypass the bar imposed by the Tax Injunction Act, since "[t]he existence of

federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman–Green. Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); *see also FDIC v. Four Star Holding Co.,* 178 F.3d 97, 100 (2d Cir.1999) (quoting *Newman–Green,* 490 U.S. at 830, 109 S.Ct. 2218); *Morongo,* 858 F.2d at 1380 ("Subject matter jurisdiction must exist as of the time the action is commenced.... If jurisdiction is lacking at the outset, the district court has 'no power to do anything with the case except dismiss.'"). Conversely, it is well-settled that "'if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.'" *Four Star,* 178 F.3d at 100 (quoting *Freeport–McMoRan, Inc. v. KN Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) (per curiam)).

As such, 12 U.S.C. § 1819(b)(2)(A), which provides federal subject-matter jurisdiction where the FDIC is a party to an action, was not applicable at the time the suit was filed. *See* 12 U.S.C. § 1819(b)(2)(A) ("all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States"). Moreover, since the court did not have jurisdiction over the original action at the time of the filing of the City's Amended Third–Party Complaint [Dkt. No. 55] against the FDIC in May 1999, the Amended Third–Party Complaint against the FDIC could not retroactively confer jurisdiction under section

**11.** In this vein, S/N1 suggests that the court should exercise supplemental jurisdiction over S/N1's original complaint based on its jurisdiction over the Amended Third-Party Complaint. *See* Dkt. No. 85 at 4. S/N1 also suggests that the court should find that S/N1 is a necessary party to the Amended Third–Party Complaint against the FDIC. *See id.* at 5. The court disagrees.

As is more fully discussed above, the court did not properly have jurisdiction over the original complaint at the outset, and supplemental jurisdiction cannot then be used to bootstrap the original complaint into federal question jurisdiction under 12 U.S.C.

§ 1819(b)(2)(A). Moreover, third-party claims such as the one against the FDIC are, by their nature, derivative of the original complaint and often depend for their existence on the success of the plaintiff against the defendant/third-party plaintiff. *See generally* 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* Civil 2d § 1446 (1990 & 2000 Supp.). This fact does not support the claim that the original plaintiff is therefore a necessary party to the third-party claim, much less that subject-matter jurisdiction therefore exists over the original claim in the face of a statutory jurisdictional bar such as the Tax Injunction Act.

1819(b)(2)(A). *See, e.g., New Bank of New England, N.A. v. Tritek Communications, Inc.,* 143 F.R.D. 13, 19–20 (D.Mass.1992) (holding that an attempt to substitute in the FDIC as a party to confer subject-matter jurisdiction under 12 U.S.C. § 1819(b)(2)(A) must fail where the court did not previously have diversity jurisdiction over the action as pled in the Amended Complaint and therefore had no jurisdiction over the motion for substitution). Thus, in the present action, the FDIC's presence as a third-party defendant will not serve to confer jurisdiction upon this court where 28 U.S.C. § 1341 otherwise withdraws federal subject-matter jurisdiction.[12]

## III. CONCLUSION

Accordingly, the court finds that S/N1's entire cause of action is barred by the operation of the Tax Injunction Act. Moreover, S/N1 is not a federal instrumentality for purposes of an exception to the jurisdictional bar of the Tax Injunction Act. Since the operation of the Tax Injunction

Act has not and cannot be waived, the court grants the FDIC's Motion for Summary Judgment [Dkt. No. 87] and City's Motion to Dismiss [Dkt. No. 90]. The clerk is directed to close the case.

**SO ORDERED.**

---

12. The court is cognizant that Congress has provided special removal and federal subject-matter jurisdiction on the FDIC:

> (2) Federal court jurisdiction
>
> (A) In general
>
> Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.
>
> (B) Removal
>
> Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90–day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party.

12 U.S.C. § 1819(b)(2)(A) & (B). These provisions do not affect the court's analysis.

The Second Circuit has recently held "that the transfer of assets by FDIC to a private third party does not divest the court of subject matter jurisdiction under Section 1819 and that the district court retained jurisdiction over this case notwithstanding the transfer of FDIC's interest in the property to RSB." *FDIC v. Four Star Holding Co.,* 178 F.3d 97,

100 (2d Cir.1999). This rule, however, comes into play only when the FDIC's presence conferred jurisdiction on the district court under section 1819(b)(2)(A) at the outset of the suit. The court finds that nothing in section 1819(b)(2)(A) alters the general rule that federal subject-matter jurisdiction is to be determined from the time of the filing of the plaintiff's complaint. *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). The court has located no cases holding to the contrary.

Moreover, it is clear that, under section 1819(b)(2)(B) in conjunction with section 1819(b)(2)(A), the FDIC's presence as a third-party defendant in a state case will allow removal to federal court, where the case will then be "deemed to arise under the laws of the United States." *See, e.g., First Union Nat'l Bank v. Hall,* No. 93–1725, 1994 WL 714056, at \*1–\*2 (S.D.Fla. Aug. 27, 1994) (citing cases); *cf. FDIC v. S & I 85–1, Ltd.,* 22 F.3d 1070, 1073 (11th Cir.1994) ("FDIC may remove an action under section 1819 irrespective of its alignment as plaintiff or defendant"). Here, however, the case was originally filed in federal court, such that the FDIC's special removal statute is not available to confer federal subject-matter jurisdiction.